In re GARNEAU.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1904.)

Nos. 1,019–1,022.

**1. BANKRUPTCY—JURISDICTION—RESIDENCE WITHIN DISTRICT.**

Residence within the district, to give a court jurisdiction of proceedings in bankruptcy, must be bona fide, and the removal of a person from one district to another for the express purpose of filing a petition in bankruptcy therein and with the intention of leaving the district as soon as he obtained a discharge does not make him a resident so as to confer jurisdiction on the court.

**2. SAME—CONCLUSIVENESS OF ADJUDICATION—DISMISSAL FOR WANT OF JURISDICTION.**

An adjudication of bankruptcy made ex parte on a voluntary petition is not conclusive on creditors, although not appealed from, and they may, by petition, ask a dismissal of the proceedings upon facts appearing on the bankrupt's examination, and showing that the court is without jurisdiction.

Appeal from the District Court of the United States for the Southern District of Illinois, and Original Petition to Review the Decree Appealed from, in Bankruptcy.

The bankrupt, a young man 26 years of age, was born in the city of St. Louis, and, with the exception of occasional absences, lived there all his life. Up to March, 1900, he resided with his brother in the city of St. Louis, and was employed by him in a stockyard in that city upon a salary of $50 a month. In March or April, 1900, he removed his residence, as he claims, to the city of East St. Louis, directly across the river from St. Louis, retaining his employment in the business of his brother in the city of St. Louis. As his sister states: "East St. Louis is not a place any one is apt to go to unless for business. You don't go there for pleasure. It is all stockyards." He rented by the month a room in the house of one Broughan at $10 a month. His effects which he

moved into the house were contained in one trunk. In August of that year he removed his trunk, keeping in the room his toilet articles and his nightshirt. The trunk was not returned to the room for over a year, and not until after the proceeding by creditors hereinafter stated. He thus removed, as he claims, to East St. Louis, for the purpose of gaining a residence to file an application in bankruptcy in the Southern District of Illinois, and to secure his discharge, and with the intention of going west immediately thereafter. He did not eat at his lodging, and the record does not show where he was accustomed to take his meals, further than for a while he obtained his breakfast at some restaurant in East St. Louis. He occupied the room at night at first quite regularly, afterwards not for several weeks at a time, and then for four or five nights in a week; but he paid rent for the room up to the present time. On July 13, 1900, he filed his petition in bankruptcy in the District Court for the Southern District of Illinois, praying to be discharged of his debts, and on that day was adjudged a bankrupt, and the matter referred to a referee. At the first meeting of creditors on the 14th of August, 1900, three debts were proven, amounting to $14,700, and the referee reports that there were no assets according to the schedules in the bankrupt's petition, and that the three creditors proving their debts were all the creditors scheduled. On November 21st, upon the petition of the creditors, a citation was issued requiring the bankrupt to appear for examination on December 4th, which was had on that date; the facts concerning his alleged change of residence then appearing and being first known to the creditors. On that date, also, the bankrupt filed his petition for a discharge, and on December 22d, the creditors, who were respectively residents of the states of Nevada and of Utah, filed their petitions moving the court to dismiss the proceeding for want of jurisdiction upon the grounds that the bankrupt did not have his domicile within the district for the greater portion of six months before the filing of the petition, and did not have a bona fide residence or domicile within the district at any time; and subsequently, on February 15th, the three creditors filed their separate specific objections to the discharge of the bankrupt. The two matters—the motion to dismiss the proceeding and the objections to the discharge—were referred to a referee, who returned the testimony taken, and recommended that the petition in bankruptcy be dismissed for want of jurisdiction. Exceptions were filed to the report, and the court below on June 29, 1903, overruled the exceptions, sustained the report, and dismissed the proceeding. The correctness of that ruling is brought up for consideration by a direct appeal and also by an original petition to review.

George D. Reynolds, for appellant.

P. B. Kennedy and Thomas George, for respondent.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). By the terms of the bankruptcy act (Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3421]), the courts of bankruptcy are invested with jurisdiction to adjudge persons bankrupt "who have had their principal place of business, resided or had their domicile within their respective territorial jurisdictions for the preceding six months or the greater portion thereof." There is, of course, a legal distinction between "domicile" and "residence," although the terms are generally used as synonymous, the distinction depending upon the connection in which and the purpose for which the terms are used. "Domicile" is the place where one has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning, and where he exercises his political rights. There must exist in combination the fact of residence and the animus manendi. "Residence" indicates permanency of occupation as distinguished from temporary occupation, but does not include so much as "domicile," which requires an intention continued with residence. 2 Kent, 576.

Residence has been defined to be a place where a person's habitation is fixed without any present intention of removing therefrom. It is lost by leaving the place where one has acquired a permanent home and removing to another place animo non revertendi, and is gained by remaining in such new place animo manendi. Tracy v. Tracy, 62 N. J. Eq. 807, 48 Atl. 533. In Shaeffer v. Gilbert, 73 Md. 66, 20 Atl. 434, the word is thus defined:

"It does not mean * * * one's permanent place of abode where he intends to live all his days, or for an indefinite or unlimited time; nor does it mean one's residence for a temporary purpose, with the intention of returning to his former residence when that purpose shall have been accomplished, but means, as we understand it, one's actual home, in the sense of having no other home, whether he intends to reside there permanently or for a definite or indefinite length of time."

The term is an elastic one, and difficult of precise definition. The sense in which it should be used is controlled by reference to the object. Its meaning is dependent upon the circumstances then surrounding the person, upon the character of the work to be performed, upon whether he has a family or a home in another place, and largely upon his present intention. Rindge v. Green, 52 Vt. 208.

There is some looseness and some conflict in the opinions in the definition given to the term "residence." We need not stop to discuss these, because all agree that a residence, whether it must be accompanied animo manendi or may exist with a present intention at some time to remove therefrom, must be bona fide, not pretentious. Morris v. Gilmer, 129 U. S. 329, 9 Sup. Ct. 293, 32 L. Ed. 690. We are constrained to believe that the purported change of residence of the bankrupt from St. Louis to East St. Louis was pretentious only, not real; and was merely for the purpose of pretending to acquire a residence solely for the purpose of filing his petition in bankruptcy in a district in which he did not reside. Indeed, the bankrupt frankly avowed that to be his only purpose, and that he went to East St. Louis with the then intention of leaving the place so soon as he had accomplished his purpose. There was no bona fide change of residence. There was no bona fide assumption of residence in East St. Louis. He necessarily must spend the hours of business in St. Louis. He left his home in St. Louis, where he resided with relatives, and where he had passed his life, crossed the river, and at much inconvenience to his business assumed a home in a city of stockyards, to which, as his sister remarked, one is not apt "to go to unless for business; don't go there for pleasure," carrying such of his effects as he thought necessary in a single trunk, which he soon removed from the lodging he had engaged, and which was not returned for over a year, retaining at his lodging only articles of toilet and a nightshirt. He was a sojourner merely, and not a resident, of East St. Louis. We look upon this transaction as an imposition upon the jurisdiction of the court. The Congress did not intend that one may select any court of bankruptcy which he pleases in these broad United States, and be enabled, through a pretentious removal to the district of that court, to obtain his discharge from his debts. To allow that to be done would open the door to grave frauds upon creditors, which we are not disposed to countenance.

It is objected that the petition to dismiss for want of jurisdiction comes too late; that the adjudication in bankruptcy is a judgment; that the only relief to the creditor was to appeal within 10 days from that adjudication. To so hold would be to deny in 99 cases out of 100 all relief whatever, and to make easy the perpetration of fraud. In voluntary cases the adjudication passes ex parte and forthwith. The time for appeal would have passed before creditors would in most cases receive notice of the adjudication, and the record made by the bankrupt would show nothing erroneous. Here there were no laches chargeable to the creditors, for promptly upon ascertaining the facts from the examination of the bankrupt the petition to dismiss was made. But, aside from that, it would be the duty of the court sua sponte, when it is led to suspect that its jurisdiction has been imposed upon, to inquire into the facts by some appropriate form of proceeding, and, for its own protection against fraud or imposition, to act as justice may require. Morris v Gilmer, supra.

The petition for review is denied, and upon the appeal the decree of the court below dismissing the proceeding is affirmed.