In re LEMEN.

(District Court, N. D. Ohio, W. D.    Oct. 22, 1912.)

No. 1,874.

1. BANKRUPTCY (§ 14*)—JURISDICTION—RESIDENCE—DOMICILE.

Under Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), conferring on the district courts jurisdiction to adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months or the greater portion thereof, it must be shown, in order to confer jurisdiction, that the alleged bankrupt either had his principal place of business, or his residence or domicile, within the division of the district in which jurisdiction is invoked.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 14.*]

2. BANKRUPTCY (§ 14*)—JURISDICTION—"RESIDENCE."

The word "residence" as used in Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), conferring jurisdiction on the bankruptcy courts to adjudge persons bankrupt who had their principal place of business, residence, or domicile within their respective territorial jurisdictions for the preceding six months or the greater portion thereof, should be construed as providing for jurisdiction in the alternative over those who have their residence, or their domicile, or their principal place of business within the district, and hence mere residence consisting of a

relationship to the territory, which does not rise to the dignity of a domiciliary condition, if continued for the requisite proportion of the six months preceding the filing of the petition, is sufficient to confer jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 7, pp. 6151–6161; vol. 8, p. 7788.]

3. BANKRUPTCY (§ 14*)—JURISDICTION—RESIDENCE.

The bankrupt in March, 1910, having previously been engaged in sheep raising in Montana, sent his wife to her father's home in Michigan, and in October left Montana with a band of sheep, to feed and sell them in the East. He arrived in Ohio, within the district in which it was sought to have him adjudged a bankrupt, in the middle of October, 1910, where he resided until May, 1911, spending more than two-thirds of his time within the district; his absences being on business trips only. In February, 1911, he went back to Montana, sold his horses and remaining household goods, and definitely closed up his interests in that state, selling the wire on his leased ranch, and made expressions indicating a probability that he would never return to Montana. He also discussed the advisability of shipping his horses and remaining goods to Ohio or selling them in Montana. He returned to Ohio in March, and remained there until May 5th, when he took up his permanent residence in Michigan. *Held*, that though he testified that he had formed no intention of abandoning Montana as his home until his last trip, his residence from October, 1910, until May, 1911, was within the district of Ohio, and was therefore sufficient to establish jurisdiction in the bankruptcy court there.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 14.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Will R. Lemen. On objection to the jurisdiction of the court. Overruled.

C. L. Guernsey, of Fostoria, Ohio, for petitioners.

Jesse Stephens, of Fostoria, Ohio, for bankrupt.

KILLITS, District Judge. The alleged bankrupt questions the jurisdiction of this court to entertain the involuntary petition against him, and the matter is before the court on the report of the special master commissioner appointed to hear and report on the facts. The conclusions of facts and law of the special master sustain the jurisdiction.

No exception has been filed to the report, but the alleged bankrupt attempts to raise the question of jurisdiction by a motion now filed to dismiss the case for want of jurisdiction as the same appears on the face of the special master's report. Passing the question of whether or not this is good practice, and whether or not the alleged bankrupt has not waived all questions by failing to except to the master's report, we proceed to consider the issues on the merits.

At the outset it must be understood that the criterion of jurisdiction is the existence of one or more of three distinct and separable facts. By section 2 of the Bankruptcy Act district courts are given jurisdiction to—

"(1) Adjudge persons bankrupt who have had their principal place of business, resided, or had their domicil within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof," etc.

[1] It must be shown in this case that for the greater portion of the six months prior to the 19th day of May, 1911, the said Lemen either had his principal place of business in the Western division of the Northern district of Ohio, or his residence in such division, or his domicile therein.

The court, in Re Garneau, 127 Fed. 677, 62 C. C. A. 403, say:

"There is, of course, a legal distinction between 'domicile' and 'residence,' although the terms are generally used as synonymous; the distinction depending upon the connection in which and the purpose for which the terms are used. * * * 'Residence' indicates permanency of occupation as distinguished from temporary occupation, but does not include so much as 'domicile' which requires an intention continued with residence. 2 Kent, 576. Residence has been defined to be a place where a person's habitation is fixed without any present intention of removing therefrom."

And the court, quoting this language with approval from Shaeffer v. Gilbert, 73 Md. 66, 20 Atl. 434:

"It does not mean * * * one's permanent place of abode where he intends to live all his days, or for an indefinite or unlimited time; nor does it mean one's residence for a temporary purpose, with the intention of returning to his former residence when that purpose shall have been accomplished, but means, as we understand it, one's actual home, in the sense of having no other home, whether he intends to reside there permanently or for a definite or indefinite length of time"

—proceeds to say:

"The term is an elastic one, and difficult of precise definition. The sense in which it should be used is controlled by reference to the object."

Collier says (Bankruptcy, 9th Ed., 30):

"Under the former law 'domicile' and 'residence' were often held equivalent terms. By that act when residence within the district was required, the word 'domicile' was not used. The confusion resulting from the conflicting decisions as to whether residence included domicile has been obviated by inserting in this subdivision the language 'resided, or had their domicile' within the jurisdiction of the court."

If we are to construe this statute precisely as it reads, we are compelled to insist that there are in the statute these three criteria of jurisdiction, the existence of either alone of which may determine the forum. In Hills v. McKinniss Co. (D. C.) 188 Fed. 1012, 26 Am. Bankr. Rep. 329, we had occasion to say:

"It seems to us that this act must be construed, if the language reasonably permits such construction, to secure uniformity in the fullest measure and to avoid an interpretation, unless the same be compelled by the language of the statute, which permits a dishonest or tricky debtor to easily escape its provisions."

Here the language not only reasonably permits but, on its face, invites a construction which enlarges the field of the law's operation, and diminishes opportunity to avoid its beneficial influence. The question of residence or domicile, if those terms are to be confused as synonymous, as they so often are, depends very largely for determination on what the subject may find it convenient to say was his intention, and hence is open to the weakness and possible concealed viciousness of post hoc testimony inspired by present interest.

At the best, such confusion of terms furnishes much occasion for quibbling over the weight of testimony, and allows means of escape from the provisions of this salutary law to men who otherwise, in the interest of fair dealing with their creditors, should be subject to it. The facts of the case before us illustrate the mischief of such a construction, for apparently a large preference to one creditor is a stake in this contest, to be made absolute to Lemen's father if jurisdiction is defeated. Certainly as suggested by this court in Hills v. McKinniss, supra, such a law as the Bankruptcy Law, dealing as it does with a subject and over conditions which are common to all business operations within its purview, should be construed, as far as reasonably possible within the fair meaning of its language, to give it an operation as comprehensive as the evils at which it is aimed. No debtor, not of the excepted classes, should be permitted to avoid it unless either the particular fact or a deficiency in the law's wording requires that he escape. Here there is no loophole in the law at the point under consideration.

[2] We must indulge the presumption that every word in a statute was inserted for some purpose (Bloom v. Richards, 2 Ohio St. 388–402), and hence must regard the word "resided" in section 2, Bankruptcy Act, as providing for a condition of jurisdiction in the alternative to those meant by the expressions "had their domicile within" and "had their principal place of business." We hold, therefore, that a mere residence, a relationship to the territory which does not rise to the dignity of a domiciliary condition, if it continues for the requisite proportion of the six months immediately preceding the filing of the petition, is sufficient to clothe the court of that district with jurisdiction in bankruptcy. In applying the laws relating to electoral franchise, a distinction is made between residence and domicile, and it is settled that a man may reside in one state and be domiciled in another. The purpose underlying the Bankruptcy Act, that it may operate uniformly, requires that such distinction be employed here, and it is not impossible that the courts of two districts may have jurisdiction to entertain a petition against the same debtor; that one acting which is first invoked.

[3] Where then did Lemen reside for the greater proportion of the six months prior to May 19, 1911? In March, 1910, having theretofore maintained a home in Montana, engaging extensively in sheepraising, he sent his wife to her home in Michigan, as she was expecting to be confined. In October of the same year he left Montana with several thousand sheep for the purpose of feeding and selling them in the East, having made arrangements to that end through his father, who resided at Fostoria, Ohio, in this district. From about the middle of October until early in February he fed as many as 2,800 sheep at Vanlue, in this district, gradually selling them off, and during that time and until the 5th of May, 1911, he spent more than two-thirds of his time within the district, either at Vanlue or at his father's house in Fostoria, and for at least the same proportion of time his wife and baby were within the district at one of these two places. His absences during this period were for business trips only. On the

5th of May unquestionably he took up his permanent residence in Michigan. In February, 1911, he went back to Montana and sold his horses and remaining household goods, and definitely closed up all interests in that state. He did not return to Ohio until after the 4th of March, and he says that he had formed no intention of abandoning Montana as his home until on this last trip.

The intention of the party under consideration is always a fact to be considered in cases of this kind, either as expressed by him when the subject is under controversy, or as he announces it when no issue has arisen, but obviously the potency of his testimony of his intention is to be measured in the light of the facts in the case, and especially in the light of his own conduct. His statement of what his intention was, made when his conduct is under question, upon an issue involving a determination which he had theretofore entertained, is not evidence of a very high degree of persuasiveness, if reliable evidence of conduct inconsistent with such present expression of past intention is at hand.

We feel that we must answer in the negative the question, Did he have an intention to return to Montana, to continue his habitation there, when he left in 1910? We do this in the light of these items of his conduct shown in testimony: (1) His sale of the wire on his leased ranch to the witness Mooney; that act being accompanied by expressions on his part that indicate a probability that he would never thereafter be seen in that part of Montana. (2) His talk to the witness Meyers, after he had come to Ohio, in 1910, and before his return to Montana in February, as to the advisability of his shipping his horses and remaining goods to Ohio or selling them in Montana. (3) His failure, in the summer of 1910, after his wife had left, to complete the work necessary to hold his homestead. (4) His admitted disappointment at the character of the land allotment which he had there by way of homestead, and his dissatisfaction with the prospects of the sheep raising business. (5) And, finally, and as perhaps the most significant fact of all, his shipping four boxes of household goods in the fall of 1910 to his father's home in Ohio. These boxes contained principally bedding, knickknacks, and clothing of his wife, but he was careful to ship also a rocking chair which was valued because of its associations—an act that is clearly inconsistent with any claim that his contemplated departure from Montana at that time was for a temporary absence only. He admits that he formed no intention of going to Michigan to live until after his return from Montana in March, and, of course, had he then formed it, such a mental attitude will not avail to control the question before us, for it was a mere thought until he carried it into effect two months later.

Our conclusion from these facts is that he lost his domicile in Montana with his first departure, certainly before May 5th. That being so, unless we construe the Bankruptcy Act as we do, he was, for several months, wholly beyond its provisions, and competent, although insolvent, to distribute his assets as he pleased.

It is an established canon of construction to avoid an absurdity unless the language of the statute in question compels that situation.

We have little difficulty in concluding that from the time when he

joined his wife at his father's home in October, 1910, in the city of Fostoria, where she had preceded him nearly a week, until he left with her in the early part of May, 1911, his residence was within this district, because of which this court acquired jurisdiction to entertain a petition in bankruptcy against him. The motion to dismiss for want of jurisdiction is, therefore, overruled, with exceptions, and, there being no exception to the report of the special master commissioner, the same is approved, and his recommendations made the order of the court.