## In re AMERICAN & BRITISH MFG. CORPORATION.

(District Court, D. Connecticut. July 14, 1924.)

No. 6716.

1. **Bankruptcy ⬤⟞51—Adjudication may be vacated, where allegations of jurisdictional facts in petition are untrue.**

   A petition to vacate an adjudication made on a voluntary petition, on the ground that the court has no jurisdiction, because the facts are not as alleged in the petition, is proper procedure.

2. **Bankruptcy ⬤⟞14—Jurisdictional requirements cannot be waived by bankrupt.**

   Under Bankruptcy Act, § 2 (Comp. St. § 9586), a court is without jurisdiction to adjudge a person bankrupt, unless he has had his principal place of business, resided or had his domicile within the district for the preceding six months or the greater portion thereof, and the bankrupt cannot confer jurisdiction by waiver of such requirements.

3. **Bankruptcy ⬤⟞16—Principal place of business of bankrupt is always a question of fact.**

   The question as to the place where a bankrupt corporation carried on its principal business is purely one of fact, and each case depends on its own special circumstances.

4. **Bankruptcy ⬤⟞16—"Principal place of business" of manufacturing corporation.**

   A manufacturing corporation was organized under the laws of New York, and its principal place of business, as stated in its charter, was in New York City. It there kept a room in charge of an assistant secretary and assistant treasurer. The meetings of its directors and their various committees were held there, and the minutes of their meetings and the stock books were kept there. Its principal plant, in which at times 7,000 or 8,000 persons were employed, was located in Bridgeport, Conn., with a somewhat smaller subsidiary plant in Rhode Island. Its executive offices, its president and other executive officers, with a large clerical force, were in Bridgeport, and there its books of account were kept, contracts of purchase and sale were made, and bills sent out. Its principal bank account was kept in Bridgeport, and all checks signed there, and from that office most of its business correspondence with the public was conducted. All orders received at the New York office were forwarded there. *Held*, that its "principal place of business," within the meaning of Bankruptcy Act, § 2 (Comp. St. § 9586), was in Connecticut, and that the court in that district had jurisdiction to adjudicate it a bankrupt in its voluntary petition.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal Place of Business.]

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Bankruptcy ⟷16—Principal office of corporation not necessarily its principal place of business.**

The statement in the charter of a corporation of its principal place of business is not conclusive, under Bankruptcy Act, § 2 (Comp. St. § 9586), but the question is where its principal place of business was in point of fact during the period fixed by the act.

**6. Bankruptcy ⟷16—Court not deprived of jurisdiction by sale of property by receivers.**

Where the principal place of business of a New York corporation was in Connecticut, the fact that receivers had been appointed in New York, with ancillary receiverships in Connecticut and Rhode Island, and that its business had been discontinued and its property and assets sold by the receivers more than six months previously, did not deprive the court in Connecticut of jurisdiction to entertain a voluntary petition in bankruptcy by the corporation.

**7. Bankruptcy ⟷18½—Receivership does not affect right to invoke Bankruptcy Act.**

The Bankruptcy Act is paramount, and the jurisdiction of the bankruptcy courts thereunder exclusive, and the fact that the property of a corporation is in the hands of receivers appointed by a federal court does not render the filing of a voluntary petition by the corporation a contempt of such court.

**8. Bankruptcy ⟷391(3)—Motion to modify injunction to permit trial of action at law against bankrupt denied.**

Motion to modify an injunction to permit an action at law against bankrupt to be retried before a jury denied, on the ground that the claim involved can be more equitably disposed of and with less expense to the estate in the bankruptcy court.

In Bankruptcy. In the matter of the American & British Manufacturing Company, bankrupt. On motion by creditor to vacate adjudication and to modify injunction. Both motions denied.

Choate, Hall & Stewart, of Boston, Mass., and Homer S. Cummings, of Stamford, Conn., for plaintiff.

Larkin, Rathbone & Perry and Henry E. Kelley, all of New York City, for Central Union Trust Co.

Louis H. Strouse, of New York City, and Wm. H. Comley, of Bridgeport, Conn., for trustee.

THOMAS, District Judge. On November 20, 1923, the American & British Manufacturing Corporation was adjudicated a bankrupt in this court upon its voluntary petition, filed November 19th. On December 5, 1923, the New Idria Quicksilver Mines, Inc., a petitioning creditor, filed its petition to have such adjudication vacated. In support of its claim that it is a creditor it alleges that it has recovered judgment in the United States District Court for the District of Rhode Island in the sum of $1,845,506.05. This allegation is admitted, and it is also conceded that upon appeal to the Circuit Court of Appeals for the First Circuit this judgment has been reversed (293 Fed. 509) and sent back for a new trial, and the cause is now pending before the Rhode Island court pursuant to the mandate of the Circuit Court of Appeals. In this suit the New Idria Company has acquired certain securities for the enforcement or partial enforcement of such judgment as it may ultimately obtain.

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the month of February, 1921, the American & British Securities Company, a Delaware corporation, began an action in equity in the United States District Court for the Southern District of New York against the American & British Manufacturing Company to conserve the assets of the defendant. In this action the defendant filed its answer, admitting the allegations of the complaint, and thereupon a receiver was appointed by the District Court for the Southern District of New York, and ancillary receivers were appointed in Rhode Island and Connecticut, in both of which states the defendant had large manufacturing establishments. The receivers thus appointed duly qualified and have administered the property of the Providence and Bridgeport factories ever since their appointment in February, 1921, down to the date of adjudication on November 20, 1923.

The petition to vacate the adjudication is based on three grounds: (1) That the district of Connecticut had no jurisdiction in the premises, because the bankrupt was neither a resident of nor domiciled within this district, nor did it have its principal place of business in this district within six months or the greater portion thereof preceding the filing of the petition in bankruptcy. (2) That the petition was filed in violation of an order of the United States District Court for the Southern District of New York, and that said filing was in contempt of such court. (3) That the petition was unnecessary and vexatious and an interference with the administration of the estate of the bankrupt now already undertaken by the District Courts of New York, Rhode Island and Connecticut. Testimony has been taken upon the issues tendered by the petition, and from all the evidence I deem the following facts established:

The American & British Manufacturing Corporation is a corporation organized under the laws of the state of New York and was incorporated in 1919. Its principal business office was stated in its charter to be in New York City. All meetings of the board of directors, executive committee, finance committee, and of its stockholders from the date of incorporation to the date of filing the petition herein were held in New York City. The minute books, stock and transfer books, and records of meetings of the various committees of the board of directors were kept at its office in New York City. In its by-laws and in several instruments executed by the corporation it was recited that its principal place of business was in New York City. The laws of Connecticut, prescribing what steps must be taken by a foreign corporation before doing business in this state, were not complied with.

The office of the company in New York consisted of one room in a suite occupied by the law firm of Loucks, Connett & Cullen, 120 Broadway, who were general counsel for the corporation. The office was in charge of an assistant secretary and assistant treasurer. The corporation's only asset—its only possession in New York City—was a solitary letter file, which was kept in that room. All of its other assets were either at Bridgeport or Providence, in each of which cities it owned large manufacturing establishments.

The Bridgeport plant consisted of between 25 and 30 buildings, occupying between seven and eight acres. The executive offices of the company were in Bridgeport, and consisted of a large suite of rooms,

occupied by the president, secretary, treasurer, assistant treasurer, and a clerical force of 60 to 70 persons. All general books of account were kept there under the supervision of the assistant treasurer. Contracts of purchase and sale were, with few exceptions, made at Bridgeport, or under directions from the Bridgeport office. Bills were sent out from both plants, but all payments were directed to be made at Bridgeport, and most of them were made there. All quotations made by either plant had to be approved by the president at Bridgeport. The principal bank account was kept there, and all checks were signed there. The bulk of the correspondence with the general public was carried on from there, and all records, except stock books and minute books, were kept there. No business was solicited from the New York office. All mail received by it relating to the conduct of the business was referred to the Bridgeport office. The highest number of factory employees was 7,000 or 8,000, and this number gradually dwindled to as many hundred, and that number was gradually reduced until operations ceased. The weekly pay roll, made up and financed in Bridgeport, varied from the high peak of $21,893 down to $468, and finally nothing, when operations ceased.

The Providence plant contained 15 to 20 buildings of various sizes, about seven acres of ground, but was smaller than the Bridgeport plant in the number of persons employed. No officer was stationed there, and all business done there was transacted under the directions issued from the Bridgeport office, and the Providence plant undertook no business without first communicating with Bridgeport, and securing the approval of the proper officer at Bridgeport. The average number of men employed at Providence was less than at Bridgeport, but the weekly pay roll for Providence was financed from the Bridgeport office and sent over to Providence.

The evidence is uncertain as to whether the president of the corporation directed the business and merely reported to the executive committee what he had done, or carried out in detail the policies which had been previously decided upon by the executive committee; but in the view which I take of the case this is immaterial, but from a careful scrutiny of all the evidence it is apparent that Bridgeport was the principal place of the business operations of the corporation.

On February 16, 1921, a receiver in equity was appointed for the corporation by the United States District Court for the Southern District of New York. Thereafter ancillary receivers were appointed in Connecticut and Rhode Island, and since that time no business of any kind has been carried on by the company. The receivers continued in control until the property in this state was sold by the receivers on March 10, 1923, and the business of the bankrupt ceased in Connecticut on that date. The Providence plant was also sold by the receivers shortly thereafter.

[1] It is contended by the bankrupt that this motion should be denied, because the petition in bankruptcy alleges all the jurisdictional facts, and that on a motion to vacate, which is equivalent to a demurrer, only questions of law can properly be raised. It is well settled, however, that a petition to vacate upon the ground that the court has

no jurisdiction because the facts are not as alleged in the petition is the proper procedure. In re San Antonio Land & Irrigation Co., Limited (D. C.) 228 Fed. 984, Judge Augustus N. Hand said, on page 986, in reply to the claim of the trustee that the adjudication cannot be attacked collaterally, but only on appeal:

"In a voluntary proceeding, which this was, an adjudication in bankruptcy immediately follows the filing of a petition good on its face, without opportunity to any interested person to question the allegations of the petitioner. It seems to be entirely settled that allegations as to residence, domicile, and principal place of business are jurisdictional matters. A petition to vacate upon the ground that the court obtained no jurisdiction of the subject-matter, if these facts are not as alleged, is the correct practice. In re Garneau, 127 Fed. 677, 62 C. C. A. 403; In re Guanacevi Tunnel Co., 201 Fed. 317, 119 C. C. A. 554."

Had the instant case been one of involuntary proceedings, any creditor could have intervened, answered, and joined issue with the petitioner as to any of the facts set forth in the petition. Where, however, the bankrupt files a voluntary petition, a creditor has no opportunity of contesting the adjudication, as such adjudication follows automatically upon the filing of the petition, and his only remedy, therefore, is to come into court and move to vacate the adjudication.

[2] It was held in Finn v. Carolina Portland Cement Co., 232 Fed. 815, 147 C. C. A. 9, that the bankrupt may not waive jurisdiction where the same depends upon residence or place of business. In discussing the effect of the provisions of section 2 of the Bankruptcy Act, and the requisites necessary to confer jurisdiction, Judge Maxey said on pages 817 and 818 (147 C. C. A. 11):

"By the terms of the act it appears that District Courts are invested with jurisdiction to adjudge persons bankrupt (1) who have had their principal place of business, or (2) who have resided, or (3) who have had their domicile within their respective territorial jurisdictions for the period of six months, or the greater portion thereof. The grant of jurisdiction is therefore not general in the sense that persons may be adjudged bankrupt, regardless of the place of their residence, etc. But the jurisdiction of the court over the estate of the bankrupt, the subject-matter of the proceeding, is confined by the terms of the act to such persons as may be embraced within one of the three categories mentioned. If the person has resided within the district for the preceding six months or a greater portion thereof, if he has had his domicile therein for the period named, or if he has had his principal place of business within the district for the time prescribed, the court is invested with jurisdiction to adjudge him a bankrupt. If, however, it be made to appear to the satisfaction of the court that the person is not included within either of the three categories, the court is without power or jurisdiction to proceed, and hence the proceeding should be dismissed. The question here involved is one affecting the power, the general jurisdiction, of the court to act. It is not a question of mere personal privilege, which may be waived by the bankrupt at his election, as in a case where the court is invested with general jurisdiction over the subject-matter, but suit is brought in the wrong district. There is no doubt that in the case supposed it is competent for the defendant to waive his right to be sued in the proper district by appearing generally in the suit, or otherwise consenting to the jurisdiction.

"But let us go a step further and suppose that a suit between citizens of different states is based upon a note for $1,800 and the defendant appears and consents to the jurisdiction. Has the court the power or jurisdiction to proceed in the case? It certainly has general jurisdiction over the subject-matter, and in the case supposed jurisdiction of the person. But it has not jurisdiction over the subject-matter in the particular case simply for the reason that,

by the terms of the statute, the matter in controversy, in order to confer jurisdiction, must exceed $3,000. And in such a case the court sua sponte, and over the protest of the parties, will take notice of the want of jurisdiction and dismiss the suit. Why? Because the law is thus written. And a like rule should apply and for a similar reason to a proceeding of this nature arising under section 2 of the Bankruptcy Act. The fact, therefore, that Finn first appeared in the present case by filing demurrers to the petition of the creditors, going to the merits of the controversy, without objecting to the jurisdiction, would not preclude him from timely asserting thereafter the want of jurisdiction. Indeed, under section 37 of the Judicial Code, the question of jurisdiction proper, as contradistinguished from that of mere personal privilege, may be raised at any time during the progress of the litigation? It was raised in the present case by Finn, the alleged bankrupt, within a month after the order of adjudication and before any further proceedings were had, and by the two creditors, Silsbe and Clarke, prior to the order adjudging Finn a bankrupt. Hence it is evident there was no laches on the part either of the alleged bankrupt or of the two creditors.

"We conclude, therefore, that if, in an appropriate proceeding instituted by the trial court, it be made to appear that the allegations contained in the verified motions of Finn, Silsbe, and Clarke, are true, the court should proceed no further, except to dismiss the proceeding for want of jurisdiction. So far as we are advised the precise question here considered has not been passed upon by the Supreme Court, but the views herein expressed find support in the following authorities: In re Garneau, 127 Fed. 677, 62 C. C. A. 403; In re Plotke, 104 Fed. 964, 44 C. C. A. 282; In re Guanacevi Tunnel Co., 201 Fed. 316, 119 C. C. A. 554; In re Williams (D. C.) 120 Fed. 34; In re San Antonio Land & Irrigation Co., Limited (D. C.) 228 Fed. 984; Collier on Bankruptcy (9th Ed.) p. 30."

It is not contended by the bankrupt that it had its residence or domicile within the state of Connecticut, and obviously such a contention, if made, would be unsound, as the residence of a corporation is the state wherein it is created. In its petition that it be adjudged a bankrupt, it is alleged that it had its principal office and its principal place of business in Bridgeport for the greater portion of six months next preceding the filing of the petition. It seems unnecessary to reiterate the principle, so often laid down, that courts of bankruptcy are statutory in their origin, and that they have no power or jurisdiction other than that conferred on them by statute or that necessarily to be implied therefrom. Section 2 of the Bankruptcy Act (Comp. St. § 9586), under which the bankrupt invoked the jurisdiction of this court, provides, so far as is here pertinent, that District Courts shall have power—

"to adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof," etc.

It is quite true that there was a great deal of testimony and documentary evidence offered to show how the business of the corporation was conducted and allocated prior to the time when the receivers in equity took possession of the property, as well as to establish the fact that its principal place of business was in Bridgeport. The evidence seems to clearly establish that before the receivers were appointed the principal place of business of the corporation was in Bridgeport. There was also testimony and a volume of documentary evidence offered to show and successfully establish the fact that the corporation was organized under the laws of New York, that it had its office in the

city of New York, that the executive committee of the board and the board of directors met in New York City, that the meetings of stockholders were held at the office of the corporation in New York City, that a large majority of its board of directors and the executive committee were residents of the city or state of New York, that the committee of the board of directors exercised a general supervision over the conduct of the corporation's business, that all contracts were prepared in the offices of the company's general counsel in New York, and had to be submitted to the committees of the board of directors before being signed by the president, all of which was merely a matter of internal government of the corporation. It therefore seems very clear that the residence and domicile of the bankrupt in this case, under the evidence, is in New York City.

[3] The question then that the jurisdiction to adjudicate as a bankrupt exists can be sustained only upon the theory that the principal place of business was located within this district; that is to say, within the state of Connecticut. This question is always one depending upon the particular facts concerning any given case under consideration. As Judge Evans said in Re R. H. Pennington & Co. (D. C.) 228 Fed. 388, 390:

"Under the Bankruptcy Act the question should be treated as an open one, to be determined by the facts. Consequently we have heard and considered all the testimony offered, and have reached the conclusion already stated."

In the case of Dryden v. Ranger Refining & Pipe Line Co. (C. C. A.) 280 Fed. 257, Judge King, in considering again where the principal place of business of a corporation which had offices in Texas, Missouri, and other places, was, said on page 262:

"The court held that under these facts the Boston office was the principal place of business. It might be so held where the bulk of the business of the corporation in dealing with the public—that is, its sales—were negotiated, concluded, and collections made, at that place. Where a corporation conducts its business at a number of places, no one of which is plainly the place where its business is principally conducted, one of such places, where a substantial business is transacted, and from which general supervision of all of its business is exercised, may be properly held to be the principal place of business of such corporation. 'It is not easy, nor is it required, to lay down any general rule for determining which one of several places at which a corporation does business is its principal place of business.' In re Worcester Footwear Co. (D. C.) 251 Fed. 760, 761."

In Continental Coal Corp. et al. v. Roszelle Bros. et al., 242 Fed. 243, 246, 155 C. C. A. 83 (C. C. A. 6th Circuit), Judge Knappen, in rendering an opinion concerning a company engaged in mining operations, which was organized in Wyoming, but had coal lands in Tennessee, Kentucky, and elsewhere, said on page 246 (155 C. C. A. 86):

"But we think the place where the principal office is located is not necessarily the place where the principal business is carried on. Such may or may not be the case. * * * All the authorities recognize, as do counsel, that the question as to the place where the bankrupt carried on its principal business is purely one of fact. Each case depends upon its own special circumstances."

[4] The petitioner's counsel cites the case of In re Matthews Consolidated Slate Co., 144 Fed. 724, 75 C. C. A. 603, as authority for the

proposition that the principal place of the business of the bankrupt in this case could not be in the state of Connecticut, but in that case the court recognized that this question is always one of fact, and so stated that from the consideration of all of the facts which determined that the Boston office was the bankrupt's principal place of business, and gives its reasons for determining that most of the business was directed from that office, and that it was illogical or improbable that people desiring to do business with the corporation would do so through any office other than the Boston office. That situation differs materially from the facts in the instant case, where, as stated above, almost all of the operations of the corporation were directed from the Bridgeport office. In Burdick v. Dillon et al., 144 Fed. 737, 75 C. C. A. 603, cited by the petitioner, the court in its opinion said, after detailing the facts concerning the nature and various places of business of the corporation, that the principal office was in Boston, and it based its finding upon the fact that not only did the directors meet there, but that the books of account were kept, the general correspondence was conducted, the great bulk of sales were negotiated, bills sent out, payment received, banking done, and the supreme direction and control all exercised from the Boston office. In the instant case New York was merely the nominal "principal place of business," and on the few occasions that the board of directors met the meetings took place in New York, but, apart from that, substantially all of the business was carried on from the Bridgeport offices. The facts demonstrate further that the Providence plant was merely a subsidiary of the Bridgeport plant, and, without again going into the facts, after an examination of them, I am convinced that no place other than Bridgeport can be considered as the principal place of business.

[5] Counsel for the petitioner cite In re Guanacevi Tunnel Co., 201 Fed. 316, 119 C. C. A. 554, as authority for this proposition, and it is well at this time to consider the contention that, since the charter and certificate of incorporation fixes the principal place of business as New York, this is an important factor in determining the question. In the Guanacevi Case Judge Ward said, on page 319 (119 C. C. A. 557):

"The statement in the charter is not conclusive, the question being where, in point of fact, was the company's principal place of business during the period fixed by the act."

If there is any doubt, and only then, as to where the principal place of business existed, then the place of incorporation might, and probably would, have substantial bearing upon the finding as was stated by Judge Evans in Re Pennington & Company, supra (228 Fed. on page 390):

"If there were any doubt upon the testimony, we should be inclined to think that the proper course would be to yield to the provisions of the articles of incorporation in determining where the corporation's principal place of business is, although the 'fact that such articles fix a named city as the principal place of business is not always conclusive of the question."

I am therefore of the opinion that the company's principal place of business, within the meaning of the act, is Bridgeport.

[6] Having determined that, I come next to the question as to whether or not, the corporation having been in the hands of receivers, and

its assets having been sold and converted into cash more than six months prior to the adjudication in bankruptcy, it lost the locus of its principal place of business. The petitioner claims with reference to this point that whatever assets the corporation had were liquidated more than six months prior to the petition in bankruptcy, and that the funds of the bankrupt lay quiescent in the banks in the various states in which they were held, and further that the only operations that were carried on were the business of distributing equitably these assets. To hold as the petitioner claims would be to rule that, once a receiver is appointed, the business then loses its character, and not only is operated under court direction, but that a debtor could not receive the benefits of the Bankruptcy Act, at least while the receivers were in charge. I do not find that the authorities so hold, and the contrary seems the most reasonable and equitable rule. As was stated by the court in the case of In re Maplecroft Mills (D. C.) 218 Fed. 659, 671:

"Under the Bankruptcy Act and the theory by which it is enforced, upon the insolvency of a corporation or individual, the creditors become the owners, as it were, of the property, and have the right to administer it. They are given the right to appoint a trustee of their selection, who is to administer the property very much under their direction and control. This is a positive and uniform system provided by law for the administration of insolvent corporations. * * * 'The operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The Bankruptcy Act is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive.' In re Watts and Sachs, 190 U. S. 1. * * * If, therefore, a corporation is in the position in which a receiver has been appointed of its assets because of its insolvency, then the right of the creditors to control, manage, and administer its assets at once arises under the Bankruptcy Act."

Particularly pertinent to the question here is the case of Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444. In that case the plant of the corporation had burned, and thereafter it was liquidating its affairs, and some four months after the fire a petition in bankruptcy was filed, and the defense was interposed that, since the company was engaged in liquidation, it was not engaged in business. The court said (page 448):

"The liability of a person, whether natural or artificial, to bankruptcy is to be judged by the character of the pursuit in which such person was engaged at the time the debts due the petitioning creditors were incurred, with respect to which it may be conceded that, as to a corporation, its actual business is to be considered, and not that which it might possibly have undertaken by virtue of authorized but unexercised powers. In re New York & W. Water Co., 3 Am. Bankr. Rep. 508, 98 Fed. 711; In re Tontine Surety Co., 8 Am. Bankr. Rep. 421, 116 Fed. 401. As to such debts, an individual does not lose his previous character by ceasing to carry on the business in which they were contracted and turning to another, in which he is not liable to bankruptcy, and neither does a corporation, by stopping business altogether and going into liquidation, voluntary or involuntary. In either case, as to debts previously contracted, the business character of such person, in the contemplation of the law, remains the same. Wherever, therefore, the principal place of business of such person has been established for the greater part of six months preceding the filing of the petition, and without regard to the business there carried on, as to debts previously contracted, proceedings may be maintained."

I am disposed to agree with the opinion of Judge Peck, in Re Monarch Oil Corporation (D. C.) 272 Fed. 524, also cited by the petitioner, where the effect of the appointment of a receiver upon a business was considered. In that case a receiver was appointed over a corporation organized under the laws of Delaware and doing business in Kentucky and Ohio in June, 1919, and in May, 1920, a petition in bankruptcy was filed, and a question not unlike the one in the instant case was being considered. The court said, on page 526:

"The receiver was entitled to possession of all books and records, the principal place of business had theretofore been established in Kentucky, and the right to conduct that business had been taken from the corporation and vested in the receiver. If the principal place of business of this corporation was in Cincinnati, it must be that, whenever the affairs of a corporation, no matter how large they may be, pass into the hands of a receiver and manager appointed in the state where its real business is carried on, its principal place of business shifts to the meeting room of its stockholders, directors, and officers, however remote from the real scene of its activities, the place where its assets to be administered, and creditors to be protected are to be found. Such a rule does not appear to be required by any direct and controlling authority, nor to be best calculated to obtain a convenient, speedy and economical administration of a bankrupt's estate."

In Re Moench & Sons Co., 130 Fed. 685, 66 C. C. A. 37, the corporation was in the hands of two receivers appointed by the state court, and shortly thereafter an involuntary petition in bankruptcy was filed against the corporation. While the question there involved the matter of state receivers, the principle is the same, and there Judge Lacombe, speaking for the Circuit Court of Appeals for the Second Circuit, said on page 686 (66 C. C. A. 38):

"Section 4b provides that any corporation 'engaged principally' in manufacturing pursuits may be adjudged an involuntary bankrupt, and appellant contends that the Moench Company was not on May 9th within such category, because it had ceased doing business on March 20, 1903, the day after receivers were appointed. No case is cited in support of this proposition, and, in the absence of authority, we shall be unwilling to hold that a corporation could thus easily avoid the operation of the bankrupt act by making a general assignment, or by securing the appointment of receivers, or by ceasing to do any business, before its creditors filed a petition against it."

Having shown that the principal place of business was in Bridgeport, I am of the opinion that the appointment of a receiver in no way affected or changed the principal place of business, once the receivership attached. The principal operations of the bankrupt were in Bridgeport, and while the place where it might file its petition might be optional with the bankrupt, in view of the fact that its domicile or residence may have been elsewhere, and it could have resorted to some other jurisdiction, it nevertheless seems quite clear to me that it had a right to select Connecticut, the scene of its principal operations, as the proper place to institute these proceedings, and I am not convinced that the appointment of receivers in equity changed the principal place of business, or that it lost such identification because its assets were converted into cash. After converting the assets into cash, the receivers continued to have offices in Bridgeport, and during the six months preceding the bankruptcy sold various of the bankrupt's products, collected moneys due by virtue of the sales under order of court, closed

title for the sale of the local plant, instituted litigations for the collection of assets due the company, and conducted correspondence with reference to the bankrupt's affairs. The act, as I interpret it, does not require the actual transaction of business in the sense that products must be manufactured or sales made, and the phrase 'principal place of business' relates more to the designation of a particular place, rather than to the transaction of the volume of business. In re E. & G. Theatre Co. (D. C.) 223 Fed. 657.

[7] The question has been raised by the petitioner that the filing of the petition in bankruptcy amounts to contempt of court, and that the officers of the corporation did not have the power to file the petition in bankrupcy, in view of the appointment of receivers in equity and the injunctions issued by the courts in receivership proceedings. I am unable to concur in this view. The Bankruptcy Act is paramount, and its jurisdiction is exclusive of all other courts. Among its purposes is that all of the affairs of a bankrupt may be adjudicated in one court. The authorities in support of the proposition that, notwithstanding receivership proceedings, a petition in bankruptcy may be filed, are overwhelming, and not only is the right to file a petition logical and legal, but also equitable. To hold otherwise would be to work great injustice, and to deprive those who might be entitled to the benefit of the act of their constitutional rights.

In re Watts and Sachs, 190 U. S. 1, at page 27, 23 Sup. Ct. 718, 724 (47 L. Ed. 933), the Supreme Court, speaking through Mr. Chief Justice Fuller, said:

"And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. * * * The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent."

In United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, on pages 217, 218, 32 Sup. Ct. 620, 625 (56 L. Ed. 1055), Mr. Justice Van Devanter said:

"We think it is a necessary conclusion from these and other provisions of the act that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration. * * * A distinct purpose of the Bankruptcy Act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks. Of the fact that the suit was begun in the Circuit Court with the express leave of the court of bankruptcy, it suffices to say that the latter was

not at liberty to surrender its exclusive control over matters of administration or to confide them to another tribunal."

The Circuit Court of Appeals for the Second Circuit, in the case of United States v. Wood et al., 290 Fed. 109, cites the doctrine quoted above in U. S. Fidelity & Guaranty Co. v. Bray, supra, and reaffirms the well-known principle that the bankruptcy court in all proceedings in bankruptcy is intended to be exclusive of all other courts. In Re Yaryan Naval Stores Co., 214 Fed. 563, 131 C. C. A. 15, a case involving similar action where receivers had been acting and a contention made that the filing of a petition in bankruptcy was in contempt of court, Judge Sessions, speaking for the Circuit Court of Appeals, Sixth Circuit, after quoting section 4 of the Bankruptcy Act (Comp. St. § 9588), said on page 565 (131 C. C. A. 17):

"This language is so broad and comprehensive as to be all-embracing and all-inclusive. It clearly manifests the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation. Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being. Nor, in the absence of specific declaration, will it be presumed that any court intends to make an order which must be ineffective because in direct conflict with the legislative will and mandate. The settled rule is that the jurisdiction of the courts in bankruptcy in the administration of the affairs of insolvent persons and corporations is exclusive and paramount. In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055; Leidigh Carriage Co. v. Stengel (C. C. A. 6) 95 Fed. 637, 37 C. C. A. 210. * * *

We are not impressed with the argument that the Bankruptcy Act was not properly invoked on the ground that the receivership was not an act of bankruptcy, and, if it had been, was not assailable because bankruptcy proceedings were not begun within four months thereafter. This contention overlooks the consideration that the act on which the adjudication is based is not the original receivership, but the debtor's admission of insolvency, presumably occurring or discovered subsequent to the original receivership. To deny the right of the debtor, when such insolvency is found to exist, to take the benefit of the act and thereby secure a discharge from its debts, is to deny the ultimate paramountcy of the act, which is designed, not merely for the benefit of creditors, but for that of the debtor as well."

In Re Associated Oil Co., Inc. (D. C.) 271 Fed. 788, cited and relied upon by petitioner, the court does hold that after the appointment of a receiver in the state court a voluntary petition in bankruptcy cannot be filed. This case is unique in the principle that it lays down, and I do not attempt to reconcile my decision with that one. The memorandum of opinion cites no case as authority for the proposition laid down, and the decisions of the Supreme Court of the United States and of the Circuit Courts of Appeal, above quoted, are directly contra. Blair v. Brailey et al. (C. C. A.) 221 Fed. 1, relates to "levies, judgments, attachments, and other liens," and is not pertinent to the issue here involved.

In Re Hudson River Electric Power Co. (D. C.) 173 Fed. 934, Judge Ray dwelt at some length upon the expediency of having the eight corporations, five of which were involved in bankruptcy, conducted as one. He refers to the fact that under a receivership of the Cir-

cuit Court, as it then existed, the affairs could be wound up in one proceeding, property sold, and distribution of the assets made, whereas bankruptcy contemplated eight separate proceedings, before eight referees and eight or possibly twenty-four trustees, and a like number of counsel for the trustees, with endless complications. The same considerations and reasoning applied to the instant case would indicate the expediency of having this corporation's affairs administered and wound up in one proceeding, thereby avoiding endless complications and administrative extravagance at the expense of the creditors. The court in Woolford v. Diamond State Steel Co. (D. C.) 138 Fed. 582, indicated by dicta that, where a large majority of the creditors favor bankruptcy, the absolute right to proceed accordingly exists, federal receivership proceedings to the contrary notwithstanding.

If the law means what it says, that the Bankruptcy Act and the court are exclusive of "all" other courts, I cannot but construe it to mean "all" courts, both state and federal. The fact that there was a receivership in the federal court in this case does not alter the principle involved. The Bankruptcy Act confers a positive right upon certain conditions to designate classes of industry to avail itself of the benefits of the Bankruptcy Act. As stated above:

"Rights and privileges so positively bestowed cannot be destroyed, denied, or abridged by any power save that which created and brought them into being."

I do not understand that the injunction issued in these receivership proceedings contemplated or intended to wipe out this right to resort to bankruptcy when the corporation admits its insolvency, a condition which presumably did not exist at the time of the institution of the receivership proceedings. These authorities indicate, in addition to the legal phases of the situation, that the wishes of the large majority of the creditors should have some weight. While it is not decisive, and perhaps might have no bearing on the legal phases involved, it should be stated in this memorandum that no creditor, save the New Idria Quicksilver Mining Company, appears in opposition to these proceedings, and that might mean that no creditor appears in opposition hereto, because the petitioner is not, in the strict sense of the word, a creditor. It has a chose in action based upon a contract against the bankrupt. It has, in other words, a claim which may or may not be allowed, but at this time, so far as the record is concerned, no obligation to the petitioner exists, and that matter is referred to subsequently herein.

I am therefore of the opinion that, notwithstanding the receivership proceedings, the absolute right exists in a person or corporation that is insolvent to admit its insolvency by filing a petition in bankruptcy and thereby secure a release of all its debts.

[8] On the motion to modify the injunction and permit the petitioner to pursue before the District Court of Rhode Island its claim against the bankrupt, I have given this matter careful consideration, and have read the opinion on this case as it appears in American & British Manufacturing Co. v. New Idria Quicksilver Mining Co. (C. C. A.) 293 Fed. 509. The arguments presented by the petitioner for the modifi-

cation of the injunction restraining the prosecution of that suit again before the jury have been gone into with great care, and I may say that my final determination of the question is arrived at only after weighing the matter pro and con for a considerable length of time. I can see the force of the petitioner's argument when he says that this case has been completely tried before the District Court of Rhode Island, and that court is familiar with all the questions of fact and law involved, and that an early disposition of the trial may be expected before the jury in that forum, and also that all questions of law involved in the case, which must have been tried at great length and over a long period of time, have been passed upon by the Circuit Court of Appeals for the First Circuit, and that the matter would now have to go to the Circuit Court of Appeals for the Second Circuit, which is totally unacquainted with the issues involved. I hold this to be, however, a matter of discretion, and the arguments of counsel for the bankrupt and counsel for other creditors to the effect that the affairs of this bankrupt might be more economically administered in the bankruptcy court than elsewhere, and the reasons offered in support of that conclusion are persuasive. I rather lean towards the proposition that the claim of the New Idria Quicksilver Mining Company can be more equitably disposed of in the bankruptcy court with the least amount of expense.

To permit the matter to be again heard in the District Court before a jury, and that jury to be one which is hearing the matter "de novo," must involve a complete retrial and rehearing of all of the facts from beginning to end, together with the compilation of a voluminous record in the event of appeal at great expense to this estate, and, as has been indicated, the estate has already been put to considerable expense thus far in its administration. Without attempting to pass upon the equity of the claim involved upon this alleged breach of contract upon the part of the bankrupt for the purchase of quicksilver, it must be apparent, upon the reading of the opinion of both Circuit Judge Bingham and Circuit Judge Anderson (concurring in part), that a very grave question exists as to the legality of the contract due to the alleged conspiracy to corner the quicksilver market, and also the failure of evidence with respect to the authority of the Corbin letter referred to in Judge Anderson's opinion. This matter could be best heard, it seems to me, before the referee in bankruptcy or a special master appointed to hear it, and from which, if it were desired, the matter might speedily be brought to the attention of the Circuit Court of Appeals at considerably less expense than would be involved in another trial before a jury. I am impelled to the conclusion that the ends of justice and equity can here be best served by not permitting a plenary suit to again be brought in this matter, and, as the matter is one which I hold to be within my discretion, the petition to modify the injunction is denied.

The motions to vacate the adjudication and to modify the injunction are denied. Decree accordingly.