**In the Matter of George Turner COGER, Bankrupt.**

**No. 68–BK–25–R.**

United States District Court,
W. D. Virginia,
Roanoke Division.

April 5, 1972.

John D. Epperly, Martinsville, Va., for the First National Bank of Martinsville and Henry County.

Clyde H. Perdue, B. A. Davis, III, Rocky Mount, Va., for L. Elliott Perdue.

Howard J. Beck, Jr., Martinsville, Va., Trustee for Lawson L. Lester, Jr.

## OPINION

WIDENER, Chief Judge.

This case is before the court on a petition for review filed on April 23, 1971 by the First National Bank of Martinsville and Henry County, hereinafter referred to as the Bank. The case involves two bankrupt estates, that of George Turner Coger and Lawson L. Lester, Jr. The petition is to review an opinion and order of the bankruptcy referee dated April 9, 1971 wherein he found that Lester was the true purchaser of one-half interest in the Coger property and that the Bank was not a holder in due course of a check issued by L. Elliott Perdue for Lester's one-half interest in the Coger property.

It was previously determined in this case that a temporary restraining order preventing the Bank from prosecuting collection action in the state courts against Perdue was expressly authorized by the Bankruptcy Act. In re Coger, 319 F.Supp. 859 (W.D.Va.1970). At that time, the merits of the claim now under consideration were not decided.

The records of the state court proceedings and the bankruptcy proceedings involved in this case are before the court. The statement of facts of the referee are not disputed and reveal that by an order entered on March 5, 1969 it was determined that certain residential property in Franklin County, referred to as the Coger Property constituted an asset of the Coger bankruptcy estate, subject to contingent dower interest. The trustee was authorized to liquidate that property and reported that on May 3, 1969 he sold the real estate for $6,400.00 at public auction to Lester and Perdue. The sale was confirmed May 7, 1969 and

the trustee was authorized to convey the property and to pay the dower interest.

A letter was written by Lester upon stationery of Virginia-Carolina Builders, Inc., (hereinafter called Builders) dated May 20, 1969, to the Coger trustee. The letter declared: "Enclosed is our check in the amount of $3,200.00 covering one-half interest in the Koger [sic] property." It was signed "Virginia-Carolina Builders, Inc., L. L. Lester, Jr., Pres." A check dated May 20, 1969 was made upon the printed corporate check of Builders for $3,200.00, payable to the trustee. It was signed by "L. L. Lester, Jr., Pres."

On June 12, 1969, Lester wrote to the Coger trustee upon the business stationery of Lester Industries, Inc., stating, in part:

"* * * I am wondering if you have my and Elliott's deep [sic] prepared and also when we can get possession of the house. Naturally, I am speaking for us both at this time and guessing that it is his desire, and if you know us two, we will want to get the house repaired and rebuilt and turn it into cash."

The Coger trustee's reply, dated June 13, 1969, stated in part:

"I am in receipt of your letter of June 12th. I have heretofore prepared the deed to the house and two lots belonging to the above mentioned bankrupt, which was purchased by you and my brother, Elliott Perdue.

"Elliott Perdue now has this deed in his possession. In my judgment, you and Elliott should get together as soon as possible and make some plans in regard to the Coger house and lots which you two purchased."

The deed, dated May 12, 1969, was executed by Clyde H. Perdue, trustee in the matter of George Turner Coger, a bankrupt, party of the first part, to Lawson Lester and Elliott Perdue, parties of the second part.

On July 23, 1969, a judgment was entered by the United States District Court for the Western District of Vir-

ginia, at Danville, in favor of National Homes Corp., plaintiff, against Lester Industries, Inc., and Lester, defendants, for compensatory damages in the amount of $285,000.00, plus punitive damages in the amount of $25,000.00.

An involuntary receivership proceeding was filed August 8, 1969 in the Circuit Court of Henry County by the Bank against Lester Industries, Inc., and Lester. An order was entered on August 8, 1969 appointing an emergency receiver for a period of thirty days. On September 4, 1969, the Bank, as petitioner, made a motion and an order was entered adjudging Lester Industries, Inc., and Lester insolvent and making the receivership permanent to effect a prompt and effective liquidation of the assets of Lester Industries, Inc., and Lester. The receiver was ordered to take over all the assets of every kind and nature, wheresoever located, of the said Lester Industries and Lester and to proceed with the execution of the court's order for liquidation of such assets forthwith.

The referee found that during the late summer of 1969, probably in September, Perdue telephoned Lester and offered him a give or take proposition to buy or sell one-half undivided interest in the Coger property for $3,500.00. Lester elected to take and agreed to sell his interest at the price offered.

The referee found that on October 7, 1969 several widely separate transactions occurred within a few hours which directly relate to the claims of the parties to this controversy. The first transaction took place at Martinsville. Lester met with Perdue and closed the sale for Lester's interest in the Coger property. Lester delivered the deed dated September 25, 1969, signed by himself and his wife. Perdue was told by Lester to make the check payable to Builders. Accordingly, he drew his check upon Bankers Trust Company of Rocky Mount, dated October 7, 1969, payable to Builders for $3,500.00, identified "For Lawson Lester's half interest in George Coger house" and handed it to Lester. Within minutes, Perdue met

with his attorney and told him of the transaction which he had just concluded. The attorney took the deed to the clerk's office of the Circuit Court of Franklin County to examine the title owned by Lester in the Coger property.

The referee found that the second related occurrence took place at Danville. The involuntary petition initiating the bankruptcy proceeding against Lester, In Bankruptcy No. 69–BK–208–D, was filed in the clerk's office in Danville at 2:30 p.m., on October 7, 1969. The subpoena was served upon Lester at Martinsville.

The referee determined that next the deed from Lester and his wife to Perdue was filed in the clerk's office of the Circuit Court of Franklin County at 2:40 p.m., in Deed Book 259 at page 211. After filing the deed, Perdue's attorney discovered the abstract of the National Homes judgment against Lester et al. Within an hour or so after the deed and purchase money check were exchanged, the attorney related to Perdue the judgment lien upon the title and was instructed to telephone Lester. The attorney contacted Lester in Martinsville. The attorney told Lester of his discovery of the judgment lien and demanded he return the check and notified him that Perdue was instructing his bank to stop payment of the check. Accordingly, the Bankers Trust Company was instructed to stop payment of the purchase money check. While Lester did not testify concerning these transactions, the attorney testified as to his telephone conversation that day with Lester and stated that Lester did not deny having the check in his possession. The referee concluded that it could be assumed the check was then in Lester's possession. Upon this assumption, the referee found that next Lester endorsed the check. The referee determined that Lester went to the desk of the Senior Vice President at the First National Bank and handed him the check. The account of Builders was then overdrawn in the sum of $5,117.88. The officer took the check to a teller and it was deposited to the account of Build-

ers. The amount of the check was set off as a credit upon the overdraft. The following day the bank endorsed the check in the usual manner, by rubber stamp, "pay any bank or trust company," and forwarded it in the course of collection. Upon presentment of the check to the Bankers Trust Company at Rocky Mount, payment was refused pursuant to Perdue's stop payment order. The amount of the check remains unpaid.

On December 8, 1969, the First National Bank filed its petition to reopen this closed proceeding. The Bank alleged that the conveyance to Lester of a one-half interest in the Coger property was in error and that the conveyance should have been made to Builders. The petition prayed that the Coger trustee be directed to convey the real estate by deed to Perdue and Builders, so that Perdue might then make payment to Builders for the one-half interest in the property sold to him for $3,500.00. The Lester Trustee filed an answer to the Bank's petition claiming title and ownership of the property as an asset of Lester's estate. Witnesses were examined pursuant to § 21a of the Bankruptcy Act, 11 U.S.C. § 44(a). After such examination, it was determined necessary and expedient to sell the disputed one-half interest in the Coger property to Perdue for $3,500.00 and to deposit the proceeds upon escrow for payment to the party determined to be entitled thereto, without waiver or prejudice to the rights of any party. Accordingly, an order was entered on June 9, 1970, and pursuant thereto Perdue purchased Lester's one-half interest from his Trustee and paid into the court the sum of $3,500.00. The Coger Trustee makes no claim to the fund.

Pending a hearing of the controversy upon the merits, Perdue filed, on September 22, 1970, a petition for an injunction to restrain the First National Bank from instituting action to recover $3,500.00, the amount of the check that Perdue had ordered his bank not to pay. The Bank moved for dismissal of the petition. A temporary restraining order was entered on October 9, 1970, and the controversy over the fund in escrow was set down for hearing upon the merits. The Bank petitioned for review of the temporary restraining order. On November 30, 1970, this court sustained the temporary restraining order and remanded the case for hearing consistent with the written opinion. In re Coger, 319 F.Supp. 859 (W.D.Va.1970).

A hearing was ordered upon the following issues:

(a) the party entitled to the fund upon escrow deposit;

(b) in the event it is determined under issue (a) that the Bank is not entitled to the deposit, whether or not it is a holder in due course of the check of L. Elliott Perdue which is the subject of the suit in the state court and upon that determination whether or not the temporary restraining order is to be vacated or made permanent.

## SUMMARY

In summary, the relevant facts and dates appear to be:

May 7, 1969  Sale of property to Lester and Perdue confirmed.

May 12, 1969  Date of deed to Lester and Perdue.

July 23, 1969  National Homes judgment.

August 8, 1969  Emergency receiver for Lester Industries, Inc. and Lester appointed.

September 4, 1969  Lester adjudged insolvent and receivership made permanent.

October 7, 1969  Lester delivered deed to Perdue.

October 7, 1969  Perdue drew check for $3,500.00.

October 7, 1969  2:30 p. m. Involuntary bankruptcy petition filed in Danville.

October 7, 1969  Subpoena in bankruptcy served upon Lester in Martinsville.

October 7, 1969 2:40 p. m. Deed recorded in Franklin County.

October 7, 1969 Perdue issues stop payment order.

October 7, 1969 Lester endorsed check.

October 7, 1969 Check set off as a credit by bank.

December 8, 1969 Bank filed petition to reopen Coger proceeding.

June 9, 1970 Perdue ordered to pay $3,500.00 into escrow.

November 30, 1970 Bank restrained from collecting Perdue check.

From the foregoing statement of facts, it is obvious that either Lester's Trustee, or the First National Bank of Martinsville and Henry County, or Perdue, is going to lose $3,500.00 because of the deliberate and calculated act of Lester in selling his one-half interest in the Coger property, which he had no right to sell because he was in receivership in the state court at the time.

It is not possible on the record here for this court to use its contempt powers to require Lester to pay the money into the bankrupt estate because the bankruptcy proceeding was filed in Danville at 2:30 p. m., and the deed from Lester was recorded in Rocky Mount at 2:40 p. m., the same day. Lester had the bankruptcy papers served on him in Martinsville, at a time which could hardly have been much before 3:00 p. m., on October 7, 1969.

However, it is clear that Lester may be required to pay the $3,500.00 by the Circuit Court of Henry County. He conveyed his one-half interest in the property on October 7, 1969 while he was in receivership in that court and did so without the consent of the court.

■ In Virginia, the property of a person in receivership is in *custodia legis*, and the receiver's possession is that of the court appointing him. Harman v. McMullin, 85 Va. (10 Hans.) 187, 7 S.E. 349 (1888). An order appointing a receiver prevents any alienation or disposition of the property except with con-

sent of the court. Any interference with the control and possession of the receiver, without the permission of the court, is regarded as contempt and will be punished accordingly. Thornton v. Washington Savings Bank, 76 Va. (1 Hans.) 432 (1882).

■ A proceeding for civil contempt in Virginia partakes more of the nature of a remedial civil proceeding than it does of the nature of a criminal proceeding. Its main purpose is to procure the imposition of a punishment which will afford remedial relief to the parties injured by the violation of the injunction. The violator may be punished by requiring him to restore the status quo. Deeds v. Gilmer, 162 Va. 157, 174 S.E. 37 (1934); French v. Clintwood, 203 Va. 562, 128 S.E.2d 798 (1962). There is no reason to believe that the state court, on proper application, may not, by contempt proceedings, require Lester to restore the parties to the status quo which existed prior to Lester's deliberate defiance of the jurisdiction of that court. Should Lester pay $3,500.00 to the Bank, then Perdue's $3,500.00, presently held by the bankruptcy court, can be turned over to Lester's Trustee, and the only loser will be Lester, who caused all the difficulty, rather than Perdue or the First National Bank.

■ 11 U.S.C. § 11(a) (10) expressly authorizes a return of the records to the referee with instructions for further proceedings. The records here will be ordered so to be returned with instructions to the First National Bank of Martinsville and Henry County to proceed to institute a contempt proceeding in the Circuit Court of Henry County to require Lester to pay the $3,500.00 loss which he occasioned by his conveyance of the property while in receivership.

The Bank should then report the result of that proceeding to the referee, who should make another (not necessarily different) decision on the merits of the various contentions of the parties in the light of what takes place in the contempt proceeding.

The parties, if they are dissatisfied, may then seek review on the merits in this court, which specifically does not here decide the merits of the claims of the parties.

An order is this day entered consistent with this opinion.