Harold T. JORDAN et al.

v.

INDEPENDENT ENERGY CORPORA-TION, Sanford Dvorin and Patricia Dvorin.

INDEPENDENT ENERGY CORPORATION

v.

CENTURY NATURAL GAS CORPORATION.

No. CA3–76–1309–F.

United States District Court, N. D. Texas, Dallas Division.

Jan. 26, 1978.

As Corrected March 22, 1978.

518

Joel Held, Durant, Mankoff, Davis & Wolens, Dallas, Tex., for plaintiff.

John O. Jones, Mike Riddle, Baker, Glast, Riddle & Tuttle, Dallas, Tex., for defendant Independent Energy Corp.

Glenn E. Heatherly, Rhodes, Doscher, Chalk & Heatherly, Abilene, Tex., for third party defendant Century Natural Gas Corp.

Richard N. Currin, Bruner, Dorfman, Currin, Matlock & Hardin, Dallas, Tex., for temporary receiver.

Fred Bruner, Bruner, Dorfman, Currin, Matlock and Hardin, Dallas, Tex., General Counsel, for temporary receiver.

Kenneth J. Mighell, U. S. Atty., and Stafford Hutchinson, Asst. U. S. Atty., Dallas, Tex., for Internal Revenue Service.

Arch A. Beasley, Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, Tex., for General Motors Acceptance Corp.

Daniel C. Stewart, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for petitioning creditors in bankruptcy.

ROBERT W. PORTER, District Judge.

This case resolves a question of first impression in this circuit [1] by deciding under

---

1. The Court has found no cases in this circuit on this issue and no cases that directly address this question in any jurisdiction after the passage of the Chandler Act, Act of June 22, 1938, C. 575, 52 Stat. 840, when Congress added the current 11 U.S.C. § 11(a)(21) authorizing the

what conditions a federal district court may prevent the filing of a voluntary or involuntary petition in bankruptcy by the issuance of a federal blanket receivership injunction.[2] Plaintiffs Harold T. Jordan, Philip C. Bangle, James A. Fauci and Richard F. Julius filed this action in Dallas against defendant Independent Energy Corporation (hereinafter "IEC") on September 29, 1976 alleging violations of § 17(a) of the Securities Act of 1933, as amended, [15 U.S.C. § 77q(a)] and § 10(b) of the Securities Exchange Act of 1934, as amended, [15 U.S.C. § 78j(b)] and Rule 10b–5 thereunder (17 C.F.R. 240.10b–5).[3]

Plaintiffs allege in their complaint that IEC defrauded the plaintiffs in the sale of fractional undivided interests in oil and gas leases in Young County, Texas. IEC allegedly prepared and distributed to the plaintiffs inaccurate and incomplete reports on the progress and status of IEC's wells and diverted gas produced from wells subject to plaintiffs' leases for the use and benefit of others. Plaintiffs sought a preliminary injunction and final judgment enjoining IEC's operation and development of certain wells, requiring an accounting by IEC, rescinding the sale to plaintiffs of certain fractional undivided interests in some wells and granting the appointment of a receiver to manage IEC. This court entered a partial judgment and preliminary injunction on December 8, 1976 rescinding plaintiff Jordan's purchase of fractional shares in some wells, restricting the disbursement of IEC's funds and property, requiring the appointment of an operator of the leasehold interest and appointing an accounting firm to audit IEC's accounts at IEC's expense.

An amended complaint adding additional defendants and asserting a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure was filed on January 19, 1977.[4] On February 4, 1977, plain-

---

Bankruptcy Court after appointing a trustee to obtain all the bankruptcy property under the management of a state or federally appointed receiver. *See In re Lustron Corp.*, 184 F.2d 798 (7th Cir. 1950), *cert. denied*, 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682 (1951) (assumes injunction not bar bankruptcy); *In re Naftalin and Co.*, 315 F.Supp. 463 (D.C.Minn.1970).

**2.** The term "blanket receivership injunction" refers to the broad injunctive language restraining all persons from instituting any action which would interfere with the receiver's possession of the receivership property. See note 5 for the injunction language used in this case.

Courts of Bankruptcy include the United States District Courts and the District Courts *of the Territories.* 11 U.S.C. § 1(10). District Courts have established a procedure for bankruptcy cases to be referred to a bankruptcy referee after filing. 11 U.S.C. § 45; Rules 101, 102, Bankruptcy Rules. In this case the IEC receivership proceedings and the creditors' petition for involuntary bankruptcy are both pending in the Federal District Court for the Northern District of Texas, Dallas Division. This opinion will refer to the "Bankruptcy Court" and the "Federal District Court" as separate entities throughout the opinion to aid the reader in distinguishing between the responsibilities and powers of the Federal District Court through its bankruptcy referee and the Federal District Court in its jurisdiction over matters other than bankruptcy.

**3.** Section 17(a) of the Securities Act of 1933, as amended, [(15 U.S.C. § 77q(a)] provides that:

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) To employ any device, scheme, or artifice to defraud,

(2) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(3) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

Section 10(b) of the Securities Exchange Act of 1934, as amended [(15 U.S.C. § 78j(b)] makes it unlawful for any person to directly or indirectly use or employ any manipulative or deceptive device in contravention of rules and regulations promulgated by the Securities and Exchange Commission (hereinafter "SEC").

The SEC's Rule 10b–5 provides that it is unlawful for any person to perpetrate a fraud in sale or purchase of securities. 17 C.F.R. 240.10b–5.

**4.** This Court has not acted upon plaintiff's request for certification of a class action pending a decision on whether this court's stay order prevents the filing of an involuntary or voluntary petition in bankruptcy.

tiffs moved this court to appoint a temporary receiver for defendant IEC and to grant to the receiver all powers, rights, privileges and duties necessary to take control of all of IEC's business operations and assets. This court appointed a temporary receiver of IEC in its order of February 23, 1977, and stayed all persons, firms or corporations from "commencing, prosecuting, continuing or enforcing any suit or proceeding, or from executing or issuing or causing the execution or issuance of any court attachment . . . or other proceedings for the purpose of impounding or . . . interfering with any property owned by or in the possession of defendant . . ."[5]

**5.** The order appointing the temporary receiver contained two provisions which could be interpreted as prohibiting the filing of an involuntary or voluntary petition in bankruptcy:

"6. All persons are hereby enjoined from in any way disturbing the possessions of the receiver and from prosecuting any action which affects the property of the receivership company or companies.

12. All creditors of defendant Independent Energy Corporation and all other persons, firms and corporations, including sheriffs, marshals and other officers and their deputies, and the respective attorneys, servants, agents, and employees of any and all such persons, firms or corporations are hereby stayed from commencing, prosecuting, continuing or enforcing any lawsuit or proceeding, or from executing or issuing or causing the execution of issuance of any court attachment, subpoena, replevin, execution or other proceedings for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property owned by or in the possession of defendant Energy Corporation or the receiver appointed herein, wheresoever situated, and from doing any act or thing whatsoever to interfere with the possession or management of said receiver of the property and assets of defendant Independent Energy Corporation or in any way interfere with said receiver in the discharge of his duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over defendant Independent Energy Corporation; provided, however, that this order shall not apply to plaintiff's motion for certification of a class action which motion is presently pending before this court." Order of February 23, 1977 appointing a temporary receiver.

**6.** An involuntary bankruptcy petition must be filed within four months from the time that an

Counsel for various trade creditors of IEC informed the court on June 20, 1977 that these creditors wished to file an involuntary petition in bankruptcy against IEC in the bankruptcy court in Dallas by June 23, 1977. Counsel acknowledged that the language of the court's stay order of February 23, 1977 might preclude the filing of an involuntary petition in bankruptcy. The court orally permitted the filing of a petition in bankruptcy on the condition that the case not be prosecuted in the bankruptcy court until this court had had an opportunity to decide whether the blanket receivership injunction stayed the petitioning creditors and IEC from filing or pursuing bankruptcy proceedings.[6]

act of bankruptcy occurs. Bankruptcy Act § 3(b) 11 U.S.C. § 21(b); See Note 8 *infra*.

On September 15, 1977, this court requested all parties to submit briefs on these two questions before the court. Various trade creditors who filed the involuntary petition submitted a memorandum arguing that this court did not have the power to enjoin the filing of an involuntary petition in bankruptcy, but the court received no response from any of the other parties, including the court's appointed receiver.

This court's local rules of practice which supplement the local rules of the Northern District of Texas provide procedures to be followed when either a plaintiff or defendant becomes the subject of bankruptcy proceedings:

### RULES OF PRACTICE
### NOTICE TO ATTORNEYS

All attorneys and parties shall comply with the Local Rules of Practice before the United States District Court for the Northern District of Texas and these Rules of Practice. These Rules of Practice are numbered to supplement the Local Rules of Practice of the Northern District of Texas. All rules supercede previously issued local rules.

These Rules of Practice are published in *Jordan v. Independent Energy Corp.*, 446 F.Supp. 516, fn. 6 (N.D.Tex.1978).

### V. MOTIONS, BRIEFS, AND PROPOSED ORDERS

*Rule 5.1: Motion Practice, Generally*

(f) *Oral Argument.* (add to end of paragraph) The court will hear a motion docket beginning at 11:00 the first Monday of each month, and at 10:30 a. m. on all other Mondays. The court allots a maximum of one half hour for argument.

### VI. DISCOVERY

*Rule 6.01: Discovery in General*

Discovery must be conducted in a "reasonable" manner. See *SCM v. Industrial Commerc-*

*iale Research Corp.*, 72 F.R.D. 110 (N.D.Tex. 1976); *Associated Radio Service Co. v. Page Airways, Inc.*, 73 F.R.D. 633 (N.D.Tex.1977).

Discovery deadlines set forth in the court's trial setting order may be extended by mutual agreement as long as the date for submitting the pretrial order and date of trial are not jeopardized.

*Rule 6.1: Discovery Documents, Generally*

(b) *Form of Interrogatories and Requests for Admissions.* (add to end of paragraph) The court will permit a *maximum* of 25 interrogatories (with a maximum of 2 subparts per interrogatory) to be served on any party. The court may permit additional interrogatories to be served on a party in unusual circumstances when the movant establishes good cause for so doing.

## VIII. TRIAL PROCEDURE

*Rule 8.01: Trial Settings, Generally*

Trials are set by order of the court with copies to all attorneys of record. The District Clerk will note on the docket sheet all trial dates ordered by the court at docket call for cases reset on the docket. It should not be necessary for attorneys to inquire about whether a case has been set for trial.

(a) *Docket Call.* Cases set on the docket will be called at 9:30 a. m. on Monday mornings or Tuesday mornings if the preceding Monday is a legal holiday. The court will not inform the parties prior to docket call of their position on the trial docket. The court will notify the attorneys in the number one case that they should have their witnesses on standby. All other parties should announce ready at docket call subject to notice to secure witnesses.

Juries will be picked in jury cases following docket call on the trial date. Opening statements and testimony in all cases will usually begin at 9 a. m. the morning following docket call.

(b) *First Trial Date.* The court attempts to set most cases for trial five months from the date of answer. Attorneys should plan their discovery accordingly.

(c) *Trial Postponement.* Requests for trial postponement may be made in written letter request to the appropriate law clerk by the date specified in the court's trial setting order. The court will only consider motions for continuance after that specified date. If the court has not ruled upon a motion for continuance, the parties should prepare for trial and the motion will be heard on the date of trial.

## IX. JUDGMENTS, SETTLEMENTS, AND SENTENCING

*Rule 9.2: Voluntary Dismissals of Civil Actions*

(add at end of paragraph) The court will enter the following standard dismissal order when the court is informed that the parties have settled a case unless the parties request otherwise.

"The court has received notification from the parties that this case has been settled and therefore all claims by all parties in this ac-tion are dismissed with prejudice subject to reopening within 60 days if settlement is not consummated. It is so Ordered."

## X. SPECIAL PROCEEDINGS

*Rule 10.2: Civil Class Actions*

(e) *Settlement or Dismissal of Class Action Allegations.* (add to end of paragraph) When settlement is achieved in a case where the class certification question has never been passed upon by the court, the parties should submit letter briefs to the court answering the questions found in *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61 (S.D.Tex.1977). The court will review the answers to these questions before approving the settlement. *McArthur v. Southern Airways, Inc.*, 556 F.2d· 298 (5th Cir. 1977), vacated on other grds., 569 F.2d 276 (5th Cir. 1978).

## XI. CLERICAL PROCEDURES

*Rule 11.01: Attorney's Change of Address*

If an attorney changes his address, the attorney should send a letter to the District Clerk listing his current and previous addresses, and listing all of the cases by style and number in which he is participating.

## XIII. ATTORNEYS

*Rule 13.8: Attorney as a Witness*

(add to end of paragraph) Attorneys should notify the court as soon as it appears that they or members of their firms have any testimony that *could conceivably* be used at trial. See *Supreme Beef Processors, Inc. v. American Consumer Industries, Inc.*, 441 F.Supp. 1064 (N.D.Tex.1977). This duty of notification shall apply to all attorneys in cases before this court regardless of whether they or their firm are personally involved in the potential conflict under the disciplinary rules and regardless of whether the individual attorney believes one of the four exceptions specified in DR 5–101(b) applies.

## XV. BANKRUPTCY RULES

*Rule 15.01: Procedure When Plaintiff or Defendant in District Court Case Becomes Subject of Bankruptcy Proceedings*

(a) *Plaintiff Bankrupt*: The Plaintiff should notify the Court when the plaintiff becomes involved in bankruptcy proceedings and the Trustee in bankruptcy shall be substituted for the plaintiff as a necessary party to the action within 30 days of the institution of bankruptcy proceedings when substitution is appropriate under 11 U.S.C. § 110 (Bankruptcy Act § 70).

(b) *Defendant Bankrupt.*

(1) *Provable Claims.* The plaintiff shall notify the court within 90 days of the institution of bankruptcy proceedings whether he has filed a proof of claim under the provisions of 11 U.S.C. § 93 (Bankruptcy Act § 57) in the bankruptcy court and whether an objection has been filed. Bankruptcy Rules R. 306(b).

(2) *Non-Provable Claims.* The plaintiff shall notify the court within 90 days of the institution of bankruptcy proceedings whether he has filed a complaint to determine dischargeability under 11 U.S.C. § 32 (Bankruptcy Act § 14) and

**522**

A creditor's petition for bankruptcy was filed on June 23, 1977 with the

Bankruptcy Rule 404, or under 11 U.S.C. § 35 (Bankruptcy Act § 17) and Bankruptcy Rule 409.

(3) *Counterclaims/Crossclaims*. The Defendant shall move to substitute the Trustee in bankruptcy as a necessary party to the action within 30 days of the institution of bankruptcy proceedings if a counterclaim or crossclaim has been filed in the case, and the court may consider dismissing the case for want of prosecution if the Trustee does not pursue the action.

(4) After the court has received the requested information, the court will enter an order of dismissal or other order. *United Merchants and Manufacturers, Inc. v. Goldenberg*, —— F.Supp. —— (N.D.Tex.1978).

Should a party fail to comply with the Local Rules of Practice before the United States District Court for the Northern District of Texas or these Rules of Practice, an ex parte hearing may be held and dismissal, default, attorney sanctions, or any other appropriate action may be taken.

(s) <u>Robert W. Porter</u>
Robert W. Porter
United States District Judge
Dated: January 1, 1978.

7. Dresser Industries, Inc., Dowell Division of the Dow Chemical Co. and Leon Harvey Drilling Co., Inc. filed the involuntary petition in bankruptcy as creditors of IEC. *In Re Independent Energy Corp.*, alleged bankrupt, No. BK–3–77–308–G.

The district court's blanket receivership order of February 23, 1977 restrains only individuals from participating in other court proceedings. On its face the order does not restrain a bankruptcy court from proceeding to adjudge IEC a bankrupt and liquidating its assets.

The filing of the involuntary petition in bankruptcy, may, on the other hand, stay the district court from proceeding with any further action in the IEC receivership. Bankruptcy Rule 401. Rule 401 of the Bankruptcy Rules provides in part that:

"(a) *Stay of Actions*: The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under Clause (1), (5), (6), or (7) of § 17(a) of the Act."

None of the four exceptions to the rule 401(a) stay apply in this case: Clause 1 exempts taxes owing to the United States or any State; Clause 5 exempts some wages and commissions; Clause 6 exempts some employee wages and other monies; and Clause 7 exempts alimony. Bankruptcy Act § 17(a)(1), (5), (6), (7); 11 U.S.C. § 35(a)(1)(5)(6)(7).

bankruptcy court.[7] On July 13, 1977, alleged bankrupt IEC filed its answer to this

A Rule 401 stay may not bar another court from proceeding to trial in a related action involving the bankrupt if: (1) it is a suit for "willful and malicious injuries to the person or property of another other than conversion . . ." where a right to trial by a jury exists or; (2) upon application to the Bankruptcy Court to lift the Rule 401 stay, the Bankruptcy Court finds that the controversy involves either a debt which is non-provable under Bankruptcy Act § 63, a provable debt which is non-dischargeable under Bankruptcy Act § 17(a)(2) or (4), or a debt which is not allowable under provisions of Bankruptcy Act § 57(d).

A Rule 401 stay does not apply to suits for "willful and malicious injuries to the person or property of another other than conversion . . ." where a right to trial by jury exists in a case that has already been commenced. Bankruptcy Act § 17(a)(8) and (c)(2); 12 Collier, *Bankruptcy* ¶ 401.3[2]; Explanatory Memorandum, Report of the Senate Committee on the Judiciary, September 16, 1970, p. 11. This section refers to *provable* tort claims and not contracts, 1 A Collier *Bankruptcy*, ¶ 17.17 at 1650.3 (14th Ed.), *National Homes Corporation v. Lester Industries, Inc.*, 336 F.Supp. 644 (D.C. Va.1972); the injury must be *both* malicious and willful. 1 A Collier, *Bankruptcy*, ¶ 17.17 at 1650.4. The courts define malicious as wrongful and without just cause or dispute, and define willful as intentionally performing an act leading to injury. Id. at 1650.4–1652; *In re Vickers* (5th Cir. 1977), 556 F.2d 578.

A pending securities case where one party has demanded a jury might fit within this exception to Rule 401(a), permitting the district court to proceed to trial without seeking leave of the Bankruptcy Court to lift the Rule 401(a) stay.

The Bankruptcy Court may find upon timely application that a claim is non-provable, non-dischargeable, or not allowable, and lift the Rule 401 stay to permit that claim to be adjudicated in another court. If a debt is not a provable claim under § 63 of the Bankruptcy Act, then the Rule 401 stay does not apply to it. Bankruptcy Rule 401(a). Section 63(a)(4) provides that suits on an "open account or a contract express or implied" are provable in bankruptcy. Implied in law or implied in fact contracts are provable under § 63(a)(4). 3 A Collier, *Bankruptcy*, ¶ 63.24 at 1887 (14th ed.). A securities case founded on a contract is provable in bankruptcy, *In Re Lamont duPont Copeland, Jr.*, 3 Bank.Ct.Dec. 345 (D.C.Dela.1977), but a securities claim based primarily on tort allegations is not provable in bankruptcy and a Rule 401 stay would not bar a court from proceeding to decide this type of case. *In Re Crimmins*, 2 Bank.Ct.Dec. 132 (S.D.N.Y.1975); *Bizzell v. Hemingway*, 548 F.2d 505 (4th Cir.

petition, admitting that the corporation owed its creditors $1,000.00 or more and that a temporary receiver had been appointed on February 23, 1977 but denying that IEC was insolvent or unable to pay its debts as they matured at the time of the receiver's appointment. Alleged bankrupt IEC also sought to proceed under the voluntary rehabilitation provisions of Chapter XI of the Bankruptcy Act if the bankruptcy court found that IEC was unable to pay its debts as they matured or was insolvent at the time of the alleged act of bankruptcy.[8]

1977); *Duban v. Pro-Tech Programs, Inc.*, 441 F.Supp. 467 (S.D.N.Y. 1977). If a securities claim is found to be provable, it may still be found not allowable. See discussion *infra* of allowability under the Bankruptcy Act.

A debtor may be released from all his debts which are provable in bankruptcy by obtaining a discharge, except as provided by the Bankruptcy Act. Bankruptcy Act § 1(15), 11 U.S.C. § 1(15); Bankruptcy Act § 14(a), 11 U.S.C. § 32(a); Bankruptcy Act § 17, 11 U.S.C. § 35. Section 14 of the Bankruptcy Act lists a number of objections to discharge of the debtor if properly raised or proved. Section 17 of the Bankruptcy Act lists various debts which are not affected by discharge.

The bankruptcy court sets the time for filing of complaints objecting to the bankrupt's discharge (between 30 and 90 days after the date set for the first meeting of creditors) and unless either a complaint objecting to discharge has been filed, the bankrupt has filed a waiver under Rule 405, the bankrupt has failed to undergo examination at the first meeting of creditors or the prescribed filing fees have not been paid the court will grant the discharge at the expiration of the time fixed for filing a complaint objecting to discharge. Bankruptcy Rule 404. Those provable debts which may be discharged in bankruptcy are listed in § 63 of the Bankruptcy Act, and include, for example, fixed liabilities, negligence actions pending at the time of the bankruptcy petition, and workman's compensation awards. Bankruptcy Act § 63; 11 U.S.C. § 103.

Provable claims which fall under § 17(a)(2), (3) or (4) and claims under § 17(a)(8) where a jury has not been demanded in a pending case are stayed under Rule 401. Bankruptcy Rule 401. The Bankruptcy Court may grant relief from the stay in appropriate circumstances, Rule 401(d) and (e), and the Bankruptcy Court might find that the stay should be lifted to permit another court to proceed with the case involving a non-dischargeable debt. A securities case might fall under the provisions of § 17(a)(2) (liabilities for obtaining money or property by false pretenses or false representations) or § 17(a)(4) (fraud that occurs while a bankrupt was acting in a fiduciary capacity).

Section 57 of the Bankruptcy Act provides that a debt that is provable must also be found allowable by the Bankruptcy Court. "Allowability implies, not only provability, but also validity. If for any reason the claim is improper, or, if there be a good defense to it, it is not allowable although it may be provable as a debt." *Williams & Co. v. United States Fidelity*

*& Guaranty Co.*, 11 Ga.App. 635, 75 S.E. 1067, rev'd on other grounds, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915).

A securities claim may be disallowed under § 57(d) of the Bankruptcy Act where resolution of the claim would unreasonably delay the administration of the estate. *In re Cartridge Television* (2d Cir. 1976), 535 F.2d 1388. The judge's discretion in this area is not absolute. "To reject an easily provable securities fraud claim, for instance, might well amount to an abuse of discretion". *Id.* A claim which is not allowable is deemed not provable, and therefore would not be subject to a Rule 401 automatic stay. Bankruptcy Act § 63(d); 11 U.S.C. § 103(d).

This court requested the Bankruptcy Court in this case to enter an order in the IEC bankruptcy proceeding lifting the Rule 401 stay and permitting the district court to rule on the jurisdictional dispute. On December 19, 1977, the Bankruptcy Court entered an order to this effect. But see *Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283 (W.D.N.Y.1977) (Rule 11–44 stay "of the commencement or the continuation of any court or other proceeding against the debtor . . ." directed only against *parties*, and does not stay the court from making rulings).

8. The appointment of a receiver under § 27 of the Securities and Exchange Act of 1934 does not forbid a federal bankruptcy court from proceeding in certain causes of action after the district court takes jurisdiction of the subject matter under the 1934 act. *In re Naftalin & Co.*, 315 F.Supp. 463 (D.C.Minn.1970). The court in *Naftalin* found that the "exclusive jurisdiction" language in the 1934 act meant simply that proceedings that are under the Securities Act must be brought in the federal courts rather than the state courts. *See Beury v. Beury*, 127 F.Supp. 786, 789–90 (S.D.W.Va. 1954); *appeal dism'd.*, 222 F.2d 464 (4th Cir. 1955). The court also noted that § 2(a)(21) of the Bankruptcy Act, 11 U.S.C. § 11(a)(21) provides jurisdiction to require a transfer of the assets from the receiver appointed in the SEC action to the bankruptcy trustee.

A corporation, except a building and loan association, a municipal, railroad, insurance or banking corporation may be adjudged an involuntary bankrupt if it: (1) owes debts of $1,000 or more, Bankruptcy Act § 4(b), 11 U.S.C. § 22(b); (2) commits an act of bankruptcy within four months of the filing of a petition,

This court must decide the following questions:

(1) Did this court's stay order of February 23, 1977 enjoin all creditors of IEC from filing an involuntary petition in bankruptcy and restrain IEC from filing a voluntary petition in bankruptcy under the provisions of Chapter XII?

(2) If the stay order enjoined the filing of an involuntary petition in bankruptcy against IEC or IEC's voluntary Chapter XI proceeding, have the creditors established good cause for lifting the blanket receivership injunction to permit them to proceed with the bankruptcy proceedings?

■ The language of this court's order of February 23, 1977 appointing a temporary receiver enjoins all persons "from in any way disturbing the possessions of the receiver and from prosecuting any action which affects the property of the receivership company or companies." [9] The filing of a Chapter XI voluntary bankruptcy petition by IEC would interfere with the receiver's possession of IEC's assets by restraining the receiver from further action in a receivership proceeding. Bankruptcy Act § 2, 11 U.S.C. § 11; Bankruptcy Rule 401.[10]

IEC's filing of the voluntary petition in bankruptcy under the provisions of Chapter XI in answer to the creditor's petition for bankruptcy violates this court's stay order.

■ The court's order states that a creditor of IEC cannot file any action which would interfere with the receiver's possession of the property and assets owned by IEC.[11] The filing of a creditor's petition for bankruptcy interferes with the receiver's possession of IEC's property by restraining the receiver from further action in the receivership proceeding. Bankruptcy Act § 2, 11 U.S.C. § 11; Bankruptcy Rule 401.[12] Filing of the creditor's petition violates this court's stay order.

Early state and federal court decisions addressed the question of whether the pendency of a receivership proceeding or

---

Bankruptcy Act § 3, 11 U.S.C. § 21; (3) is not within one of the three classes of persons eligible for voluntary bankruptcy protection by § 4(b) from an involuntary petition, Bankruptcy Act § 4(b), 11 U.S.C. § 22(b); and (4) has less than twelve creditors and one creditor files the involuntary petition, or has twelve or more creditors and three creditors join in filing the petition, Bankruptcy Act § 59, 11 U.S.C. § 95. For a brief introduction to the law of bankruptcy, see D. EPSTEIN, DEBTOR–CREDITOR RELATIONS (1973).

A person commits an act of bankruptcy when, while insolvent or unable to pay his debts as they mature, he suffers voluntarily or involuntarily the appointment of a receiver or trustee to manage his property. Bankruptcy Act § 3(a)(5); 11 U.S.C. § 21(a)(5). The term "person" for purposes of the Bankruptcy Act includes corporations, except where otherwise specified. Bankruptcy Act § 1(23); 11 U.S.C. § 1(23).

The three types of debtors protected from involuntary bankruptcy are: (1) one who works for wages and earns less than $1,500 per year; (2) an individual or partnership whose income is derived principally from farming operations; and (3) a corporation that is not "monied, business or commercial." Bankruptcy Act § 4(b), 11 U.S.C. § 22(b). None of these exceptions apply to IEC.

The three creditors of IEC alleged in their petition of June 23, 1977 that: (1) IEC owed debts in the amount of $1,000 or more; (2) within four months prior to the filing of the petition, IEC committed an act of bankruptcy by permitting or suffering the appointment of a receiver on February 23, 1977 while IEC was either insolvent or unable to pay its debts.

A debtor may voluntarily file a petition under Chapter XI of the Bankruptcy Act to secure a plan of arrangement which is essentially a plan of composition and/or extension with the unsecured creditors either before or after adjudication as a bankrupt. Bankruptcy Act § 321, 11 U.S.C. § 721.

The debtor must allege that he is insolvent or unable to pay his debts as they mature, and propose a plan of arrangement for confirmation by the Bankruptcy Court. Bankruptcy Act § 323, 11 U.S.C. § 723.

IEC requested a Chapter XI proceeding if the Bankruptcy Court found that IEC could be adjudged an involuntary bankrupt.

9. Order of February 23, 1977 appointing a temporary receiver.

10. The Bankruptcy Court has the authority to require receivers to deliver property under their control to the Bankruptcy Court. Bankruptcy Act § 2(a)(21); 11 U.S.C. § 11(a)(21).

11. *See Note 9, supra.*

12. *See Note 10, supra*

the issuance of an injunction ancillary to a receivership proceeding could preclude the filing of a petition in bankruptcy. Collier's Treatise on Bankruptcy indicates that the courts uniformly held that the pendency of an equity receivership proceeding in a federal district court would not by itself prevent a corporation from filing a voluntary petition in bankruptcy, 1 Collier, *Bankruptcy,* 405 at 586,[13] and the pendency of a receivership proceeding in a state court could not prevent a corporation from filing for bankruptcy voluntarily. 1 Collier, *Bankruptcy,* 405, at 586.[14]

The state and federal courts could not agree on whether an injunction issued in conjunction with a receivership proceeding staying the filing of all other actions involving receivership property could effectively preclude the filing of a voluntary bankruptcy proceeding or a creditor's involuntary petition for bankruptcy.[15] The cases discussing the conflict between a federal blanket receivership injunction and the filing of a voluntary or involuntary petition in bankruptcy rely upon the underlying purpose of the Bankruptcy Act or Congressional intent when concluding that a federal district court may not enjoin access to the bankruptcy courts. The courts reason that Congress, in § 4(a) and (b) of the Act, meant that all persons should have access to the bankruptcy courts restricted only by the conditions specifically listed in the Bankruptcy Act and that § 2(a)(21) of the Act supports this broad interpretation of bankruptcy court power.[16]

One federal district court held in *In re E. C. Denton Stores, Company,* 5 F.Supp. 307, 310 (S.D.Ohio 1933) *appeal dism'd* 97 F.2d 999 (6th Cir. 1938) that "(t)he fact that a corporation requests, consents to, or participates in a equity receivership in respect to its corporate property, in which the usual injunction issued, will not of itself preclude the corporation's subsequently to file a voluntary petition in bankruptcy." The court relied on *In re Watts & Sachs,* 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933 (1902) to support its holding that in matters of bankruptcy the jurisdiction of the federal court is essentially exclusive.[17]

---

**13.** *In re E. C. Denton Stores Co,* 5 F.Supp. 307 (S.D.Ohio 1933); *appeal dism'd* 97 F.2d 999 (6th Cir. 1938); *In re American & British Mfg. Corp.,* 300 F. 839 (D.C.Conn.1924).

**14.** *In re Allied Construction, Inc.,* 79 F.Supp. 141 (W.D.Pa.1948); *Muffler v. Petticrew Real Estate Co,* 132 F.2d 479 (6th Cir.) *cert. denied,* 319 U.S. 766, 63 S.Ct. 1329, 87 L.Ed. 1715 (1943); *In re E. C. Denton & Haskins Music Publishing Co., Inc.,* 10 F.Supp. 802 (S.D.N.Y. 1935); *In re Knox Consolidated Coal Co.,* 50 F.2d 248 (S.D.Ind.1931); *In re Grafton Gas & Electric Light Co.,* 253 F. 668 (N.D.W.Va.1918).

Some of these decisions may be distinguishable cases involving a conflict between the pendency of state receivership proceedings and the filing of a voluntary petition in bankruptcy because of the Constitution's grant of exclusive jurisdiction in bankruptcy matters to the federal court. The United States Constitution Art. 1, § 8 and the Supremacy Clause of the Constitution, U.S. Constitution Art. 6, Cl. 2, dictate that bankruptcy proceedings supersede pending state proceedings. *Taylor v. Steinberg,* 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599 (1935); *In re Beaver Cotton Mills,* 275 F. 498 (N.D.Ga. 1921). See Annot., 32 A.L.R. 979 (1924).

One court has held that after the appointment of a receiver in a state court a voluntary petition in bankruptcy cannot be filed. *In re Associated Oil Co., Inc.,* 271 F. 788 (E.D.La.

1921). The opinion cites no authority for this holding, and the decisions cited above indicate that the case represents an aberration.

**15.** For a list of state court decisions relating to this matter see 1 Collier, ¶ 405, at 586. See also *General Atomic Co. v. Felter,* 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977) (state court cannot enjoin filing of in personam action in federal court); *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964).

**16.** *In re Lustron Corp.,* 184 F.2d 798 (7th Cir. 1950), cert. denied, 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682 (1951).

**17.** *In re Watts & Sachs,* 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933 (1902), while a jurisdictional dispute between a bankruptcy court and a state court, came to the United States Supreme Court on habeas corpus and certiorari to review a contempt sentence imposed by a federal district court upon attorneys who allegedly advised a state court to secure property which was the subject of bankruptcy proceedings. In this context the Supreme Court noted that a jurisdiction of the bankruptcy courts is essentially exclusive.

In *In re E. C. Denton Stores Co.,* 5 F.Supp. 307 (S.D.Ohio 1933) *appeal dism'd,* 97 F.2d 999 (6th Cir. 1938) the petitioner sought the right to

The American & British Securities Co. commenced an equity action in a New York Federal District Court in February, 1921 to conserve the corporation's assets. *In re American & British Manufacturing Corp.,* 300 F. 839 (D.C.Conn.1924). The court appointed a receiver and thereafter the company was adjudicated a bankrupt upon its voluntary petition. On December 5, 1923, a creditor's petition was filed to have the adjudication vacated on the ground, among others, that the bankruptcy petition was filed in violation of the New York court's injunctive order and therefore was in contempt of the New York court. In reaching its opinion that notwithstanding the receivership proceedings, the corporation possessed an absolute right to file petition in bankruptcy and thereby secured a release of all its debts, the court declared:

"The bankruptcy act is paramount, and its jurisdiction is exclusive of all other courts. Among its purposes is that all the affairs of a bankrupt may be adjudicated in one court. The authorities in support of the proposition that, not withstanding receivership proceedings, a petition in bankruptcy may be filed, are overwhelming, and not only is the right to file petition logical and legal, but also equitable. To hold otherwise would be to work great injustice, and to deprive those who

file a voluntary bankruptcy proceeding after the appointment of a receiver for the corporation. The company was unable to operate its retail merchandise stores, and petitioner procured a non-resident merchandise creditor who filed a petition in the federal district court at Dayton, Ohio, seeking the appointment of a receiver and "the usual injunctive and equitable relief" which was granted by the court. The company then filed a voluntary petition in bankruptcy, and the receiver for the company asked the district court to set aside the adjudication in bankruptcy as a violation of the district court's previous injunction order appointing the receiver.

A federal district court in Missouri, reviewing a state court interlocutory decree which appointed a receiver and enjoined the Hargadine-McKittrick Dry Goods Co. and its officers from interfering with the actions of the receiver, concluded that the state court's order could not preclude the company and its directors from filing a voluntary petition in bankruptcy. *In re Hargadine-McKittrick Dry Goods Co.,* 239 F. 155 (E.D.Mo.) *rev'd on other grounds,* 244 F.

might be entitled to the benefit of the act of their constitutional rights."[18]

■ The Eighth Circuit recognized the district court's power to enjoin access to the bankruptcy court by a limitation on the exclusive jurisdiction of the bankruptcy court when a conflict arose between a federal receivership and a bankruptcy proceeding. The circuit's reversal of *In re Hargadine-McKittrick Dry Goods Co.* held that where a receiver had been appointed because of a fraud or mismanagement of directors of the receivership corporation, the federal court could refuse to allow the filing of the bankruptcy petition. *Zeitinger v. Hargadine-McKittrick Dry Goods Co.,* 244 F. 719 (8th Cir. 1917).[19]

In *Zeitinger* the stockholders of the company had commenced an action alleging fraudulent mismanagement of the affairs of the corporation and the state court found that the board of directors had mismanaged the company and was accountable for the losses sustained by the corporation. The corporation then sought voluntary bankruptcy and listed as creditors at least one of the persons who had been a defendant in the earlier proceeding and who had been held liable for a sum exceeding his claim. The *Zeitinger* court held that the district

719 (8th Cir.) *cert. denied* 245 U.S. 667, 38 S.Ct. 64, 62 L.Ed. 538 (1917). The court declared that a court of general jurisdiction could not "exclude a court of bankruptcy from the exercise of its lawful jurisdiction by merely forbidding a debtor party from invoking the jurisdiction of the court of bankruptcy." *Id.* at 159.

18. *In re American & British Manufacturing Corp.,* 300 F. 839, 849 (D.C.Conn.1924), *citing In re Yaryan Naval Stores Co.,* 214 F. 563 (6th Cir. 1914).

19. Other courts have also recognized and discussed the possibility that fraud could preclude the filing of a voluntary petition in bankruptcy. *In re Beaver Cotton Mills,* 275 F. 498 (N.D.Ga. 1921); *In re Denton & Haskins Music Publishing Co., Inc.,* 10 F.Supp. 802 (S.D.N.Y.1935). The substitution of a federal bankruptcy forum for receivership proceedings in state court will not, by itself, constitute fraud. *Struthers Furnace Co. v. Grant,* 30 F.2d 576 (6th Cir. 1929); *In re Allied Construction Inc.,* 79 F.Supp. 141 (W.D.Pa.1948).

court should have dismissed the voluntary petition in order to prevent the perpetration of a fraud on the state court and the court of bankruptcy.

A few federal courts have held that a federal court could not prevent the filing of creditors' involuntary bankruptcy petition by issuing an injunction ancillary to a receivership proceeding. A Georgia federal district court appointed a receiver of the Yaryan Naval Stores Co. and on May 24, 1913 enjoined the company and all persons from instituting any suits affecting the company's property. *In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914).[20] On December 1, 1913 three unsecured creditors of the company, without securing leave of the Georgia District Court to do so, filed a petition in a federal district court in Ohio to adjudge Yaryan Naval Stores Co. bankrupt. After the Ohio court adjudged the company bankrupt, the receiver for Yaryan appealed, arguing that the creditors had no power to file the involuntary petition by the terms of the Georgia Court's stay order.

The Sixth Circuit rejected that argument, and held that the broad language of the Bankruptcy Act in §§ 4(a) and (b) [11 U.S.C. § 22(a)(b)] expressed "the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation."[21] Any conflicting injunction order must yield

to the Congressional intent to grant bankruptcy relief. The Sixth Circuit relied on the absence of any Congressional restrictions on the right of access to voluntary or involuntary bankruptcy wherever the requisite statutory conditions are found to exist and upheld the adjudication of bankruptcy.

Congress has never written any definitive statutory language in the Bankruptcy Act or elsewhere dealing with the conflict between access to the Bankruptcy Court and a blanket receivership injunction. The Chandler Act, Act June 22, 1938, C. 575, 52 Stat. 840, added a paragraph to § 2(a) of the Bankruptcy Act which clarified the Bankruptcy Courts' jurisdiction over receivership property when a bankruptcy action is instituted while receivership proceedings are pending in another court. Section 2(a)(21) of the Bankruptcy Act [11 U.S.C. § 11(a)(21)] now provides that courts of bankruptcy may require receivers or trustees appointed in other proceedings to surrender or account to the bankruptcy court receiver or trustee for all property in their possession. A receiver or trustee in bankruptcy is appointed by a bankruptcy court after the filing of a bankruptcy petition. Once a bankruptcy petition is filed, Section 2(a)(21) expressly permits the bankruptcy court to secure receivership property, but Section 2(a)(21) does not expressly resolve the question of whether a federal court, using a blanket receivership injunction, can

20. "The order appointing the receiver was in the usual form in such cases, . . . enjoining the defendant company and its officers, directors, agents and all other employees claiming to act by, through, or under said company, and all creditors and persons whomsoever, from interfering or attempting to interfere in any manner whatsoever with the possession, use, operation, or control of any part of said property, . . . and from instituting or prosecuting any action, suits or proceedings against the defendant, the Yaryan Naval Stores Co., or any action, suits or proceedings affecting any property in which the Yaryan Naval Stores Co. is interested, without the order and permissions of this court." *In re Yaryan Naval Stores Co.*, 214 F. 563 (6th Cir. 1914).

21. *In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914). Section 4(a) and (b) of the

Bankruptcy Act (11 U.S.C. § 22(a) and (b)) provides:

Any person . . . shall be entitled to the benefits of this act as a voluntary bankrupt . . . (and) . . . any natural person . . . and any moneyed, business or commercial corporation . . . owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act.

The Sixth Circuit concluded that: "(r)ights and privileges so positively bestowed cannot be destroyed, denied or abridged by any power save that which created and brought them into being. Nor, in the absence of specific declaration, will it be presumed that any court intends to make an order which must be ineffective because in direct conflict with legislative will and mandate." 214 F. at 565.

preclude access to the bankruptcy court.[22] Congress has also provided in Title 28 that the courts established by Congress shall have the power to issue all necessary writs, which includes the power of a federal district court to stay access to another court of law in appropriate circumstances in aid of jurisdiction. The courts that have considered the questions presented in this case have not referred to 28 U.S.C. § 1651, which grants the Supreme Court and all courts established by Act of Congress the power to issue all writs necessary or appropriate in aid of their respective jurisdictions[23] or Rule 65, Fed.R.Civ.Proc., which provides for the issuance of preliminary injunctions upon notice of the adverse party which set forth in detail the reasons for issuance and provide for security for costs and damages.[24] The writ statute was enacted in 1948 (Act of June 25, 1948, C. 646, 62 Stat. 944, amended act of May 24, 1949, C. 139, § 90, 63 Stat. 102) based on a similar provision enacted in 1911[25] and Rule 65 is based upon provisions of Title 28 that were enacted in 1914.[26]

The reference to "writs" in 28 U.S.C. § 1651 includes injunctions, *United States v. Western Pennsylvania Sand & Gravel Ass'n*, 114 F.Supp. 158 (D.C.Pa.1953), and a district court may use its equitable power under this statute to issue injunctions to prevent impairment of its jurisdiction. *Clinton v. United States*, 297 F.2d 899 (9th Cir.), *cert. denied*, 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14 (1961). This statute permits a district court in appropriate circumstances to issue an inter-court injunction to restrain proceedings in another forum. *United States v. Birrell*, 276 F.Supp. 798 (D.C.N.Y. 1967); see CJS Injunctions § 36. Rule 65, Fed.R.Civ.Proc., grants similar power to the District Courts to enjoin proceedings in other courts. *Hunt v. Seeley*, 115 F.2d 205 (5th Cir. 1940).

**22.** Section 2(a)(21) provides that "receivers or trustees appointed in proceedings not under this Act, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property . . . (must) deliver the property in their possession or under their control to the receiver or trustee appointed under this act or, where an arrangement or a plan under this act has been confirmed and such property has not prior thereto been delivered to a receiver or trustee appointed under this act, . . . (must) deliver such property to the debtor or other person entitled to such property according to the provision of the arrangement or plan . . ." Bankruptcy Act, § 2(a)(21); 11 U.S.C. § 11(a)(21).

There is no Constitutional right to obtain discharge of debts in bankruptcy. *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Article I, § 8, Cl. 4 of the Constitution merely provides that Congress may "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States."

**23.** Title 28 U.S.C. § 1651 provides:

"(a) The Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. (b) An alternative writ where rule nisi may be issued by a justice or judge of a court which has jurisdiction."

**24.** Rule 65, Fed.R.Civ.Proc. provides in pertinent part:

"(a)(1) *Notice.* No preliminary injunction shall be issued without notice to the adverse party.

(c) *Security.* No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who has found to have been wrongfully enjoined or restrained . . .

(d) *Form and Scope of Injunction or Restraining Order.* Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in its terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

**25.** Act of March 3, 1911, C. 231, §§ 234, 261, 262, 36 Stat. 1156, 1162.

**26.** Subdivisions (a) and (b) are taken from 38 Stat. 737 (1914), 28 U.S.C. (former) § 381 (1934); Subdivision (c) follows substantially 38 Stat. 738 (1914), 28 U.S.C. (former) § 382 (1934), Dobie, The Federal Rules of Civil Procedure, 25 Va.L.Rev. 261 (1939).

Section 2(a)(21) may by implication prevent a federal district court from enjoining access to the bankruptcy court. The provision was enacted after the passage of the all writs statute, and older, more general statutory provisions may not overrule newer specific language. *Callahan v. United States*, 74 App.D.C., 281, 122 F.2d 216 (1941). It may be interpreted to implicitly remove jurisdiction of the federal court in this area of the law. A district court would therefore lack jurisdiction to issue a blanket receivership injunction preventing access to the bankruptcy court.

Section 2(a)(21) is not more specific than 28 U.S.C. § 1651 on this issue as neither statute deals directly with the problem. The history of § 2(a)(21) suggests that it was enacted to resolve jurisdictional disputes between state and bankruptcy courts over a debtor's property after the filing of a bankruptcy petition, 1 Collier, *Bankruptcy* ¶ 2.77 at 390.8(1), and not to address the problem of preventing access to bankruptcy court by using a blanket receivership injunction.[27]

No diminution in the remedial powers of the federal courts may be inferred when Congressional intent is unclear, *In re Letourneau*, 559 F.2d 892 (2nd Cir. 1977), and 28 U.S.C. § 1651 should be limited only by express statutory language. *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977); *Adams v. United States ex rel. McCann*, N.Y., 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). In the absence of specific Congressional guidance to the contrary, a federal district court may theoretically restrain voluntary or involuntary access to the bankruptcy court by issuing a blanket receivership injunction.

The court's blanket receivership injunction in this case would terminate at the conclusion of the IEC proceedings pending in this court. The order was in the nature of a preliminary injunction and should be tested by the prerequisites for the extreme relief of a preliminary injunction. These are: (1) a substantial likelihood that the plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) a threatened injury to plaintiff that outweighs the threatened harm the injunction may do to defendant, and (4) granting of the preliminary injunction will not disserve the public interest. *Louisiana Environmental Society, Inc. v. Coleman*, 524 F.2d 930 (5th Cir. 1975); *Canal Authority of State of Texas v. Callaway*, 489 F.2d 567 (5th Cir. 1974).[28] These factors are also utilized by the court in evaluating the continuance of a preliminary injunction.

An injunction limiting access to the bankruptcy courts will never satisfy this test. Congress has enacted a uniform federal bankruptcy policy and has granted the bankruptcy courts power to fairly adjudicate and administer disputes between debtors and creditors. The debtor would be irreparably harmed by the denial of his voluntary access to the rights conferred by the Bankruptcy Act, and creditors would be irreparably harmed by their inability to secure access to the rights afforded creditors under the Act. An order restricting access to the bankruptcy court, other than as specifically provided by Congress in the Bank-

---

27. The legislative background may be considered to determine Congressional intent. *United States v. Zacks*, 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963). Some of the administrative problems addressed by § 2(a)(21) are discussed in Note, 47 Yale L.J. 262 (1937); Note, 19 Corn.L.Q. 271 (1934); Note, 41 Yale L.J. 1234 (1932). See Report of the House Committee on the Judiciary, July 29, 1937, p. 20.

28. In the agreed order granting a preliminary injunction, filed December 8, 1976, it was stipulated that IEC defrauded these plaintiffs by the use of certain misstatements, and that it was impossible to tell the amount of damages until an accounting had been completed. For this reason, the court restrained any disbursal of funds; etc. pending a resolution of this action. The order appointing a temporary receiver was based on findings in this December 8, 1976 order, and was entered to permit interim management of the company while the company was experiencing financial difficulty. The order did not specifically address the question of access to the bankruptcy court.

ruptcy Act, would not be in the public interest. The blanket receivership injunction in this case is lifted, and the case is transferred to the bankruptcy court in this district where an involuntary proceeding is now pending against IEC.[29]

 When a district court issues a blanket receivership injunction prohibiting any interference with the control and possession of the receiver, a court may hold violators guilty of criminal contempt. *Gunn v. University Committee to End War in Viet Nam*, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970); *In re Coger*, 340 F.Supp. 612 (D.C.Va.1972). The court permitted the creditors in this case to file the involuntary petition in bankruptcy pending a decision by this court on whether the court could or should prohibit access to the bankruptcy forum, and the creditors are not in contempt of court for any violation of this court's stay order.

It is so ORDERED.

---

**29.** The court suggests that the bankruptcy court appoint the receiver of the IEC receivership as the bankruptcy trustee because his familiarity with the case might expedite the proceedings and save expense for all concerned.